FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  JUL 0 1 2008  ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

In the Matter of Carolina Gutierrez Aguirre

CLAUDIA GUTIERREZ AGUIRRE

                  Petitioner,

-against-

MILTON ESPINOZA CALLE,

                  Respondent.

Civil Action No. 


JOHNSON
GOLD, MJ

---

## VERIFIED PETITION FOR THE RETURN OF
## THE CHILD TO COLOMBIA UNDER THE HAGUE CONVENTION

### PREAMBLE

1.  This Petition is brought pursuant to The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980[1] ("Hague Convention") and the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 11601 *et seq.*. The Hague Convention came into effect in the United States on July 1, 1988 and was ratified between the United States and Colombia on June 1, 1996. By this Petition, petitioner Claudia Gutierrez Aguirre seeks the return of her daughter, Carolina Gutierrez Aguirre, to her native Colombia.

2.  For the convenience of the Court, copies of the Hague Convention and ICARA are annexed as Exhibits A and B, respectively.

---

[1]  T.I.A.S. No. 11,670 at 1, 25514 U.N.T.S. at 98, *reprinted in* 51 Fed. Reg. 10493 (1986).

3.  The objectives of the Hague Convention are: (1) to secure the immediate return of children wrongfully removed or wrongfully retained in any Contracting State; and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States. Hague Convention, Art. 1.[2]

4.  The purpose of the Hague Convention is to deter family members from removing a child to a jurisdiction more favorable to their custody claims in order to obtain a right of custody. One of its main objectives is the restoration of the *status quo*, by means of the prompt return of the wrongfully removed child to his/her location before removal.[3]  On the facts below, that location is Colombia.

5.  The Hague Convention applies to cases where a child under the age of sixteen years has been removed from his or her habitual residence[4] in breach of custodial rights

---

[2]   The Second Circuit Court of Appeals has noted that "[t]he Convention rests on the principle that a child's country of 'habitual residence' is 'best placed to decide upon questions of custody and access" and thus allows an order of return for wrongful removals or retentions if they are "in breach of rights of custody." *Croll v. Croll*, 229 F.3d 133, 137 (2d Cir. 2000).

[3]   *See Glitter v. Glitter*, 396 F.3d 124, 130 (2d Cir. 2005).

[4]   "Habitual residence" has been defined by the Second Circuit Court of Appeals as "the shared intent of those entitled to fix the child's residence (usually the parents) *at the latest time that their intent was shared*. In making this determination the court should look, as always in determining intent, at actions as well as declarations." *Glitter v. Glitter*, 296 F.3d at 134 (emphasis added); *see also Armiliato v. Zaric-Armiliato*, 169 F. Supp. 2d 230 (S.D.N.Y. 2001) (fixing the inquiry on the child's perspective in determining that the child's habitual residence was Italy because she was born in Italy, maintained family in Italy, and attended school in Italy). A parent cannot create a "new 'habitual residence' by the wrongful removal and sequestering the child." *Diorinou v. Mezitis*, 132 F. Supp. 2d 139, 143 (S.D.N.Y. 2000), *aff'd* 237 F.3d 133 (2d Cir. 2001).

possessed by the petitioner, which the petitioner had been exercising at the time of the wrongful removal or wrongful retention[5] of the child. *See* Convention, Art. 3.

6. This case involves the wrongful retention of the child Carolina Gutierrez Aguirre (the "Child") in Queens County, New York by respondent Milton Espinoza Calle ("Respondent" or "Calle"), Carolina's father, in violation of the custodial rights exercised by the child's mother, petitioner Claudia Gutierrez Aguirre ("Petitioner" or "Aguirre") since the Child's birth. The wrongful retention of the Child began in July 2007. The Child is a Colombian national and has lived in Colombia with her mother from the age of four months until the time of wrongful retention when she was six years old.

## JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to 42 U.S.C. § 11603(a). Moreover, Article 1 of the Hague Convention conveys jurisdiction upon this Court because it involves the removal and retention of a child under the age of sixteen from her habitual residence of Colombia to the United States. *See* Convention, Art. 1.

8. A decision by this Court is not a determination of custody of the Child but only a determination of whether to return the Child to Colombia, where the Colombian courts may decide custody.[6]

---

[5] "Wrongful retention" occurs when it is in breach of rights of custody attributed to a person *under the law of the country in which the child was habitually resident* before the retention, and those custody rights actually exercised, or would have been exercised but for the wrongful retention. Hague Convention, Art. 3.

[6] A United States District Court "has the authority to determine the merits of an abduction claim, but not the merits of the underlying custody claim." *Diorinou v. Mezitis*, 237 F.3d 133, 140 (2d Cir. 2001).

9.   Venue lies in this district pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. §

11603(b) in that the Respondent resides within this district in Queens County, New York and

the Child is believed to be located in Queens County, New York at the time this petition is

being filed.

### COLOMBIA IS THE CHILD'S HABITUAL RESIDENCE

10.   The Child, Carolina Gutierrez Aguirre, was habitually resident in Colombia

within the meaning of Article 3 of the Hague Convention from March 2001 until her

wrongful retention in the United States in July 2007.  She was born in the United States on

November 11, 2000 and moved to Colombia with Petitioner on March 19, 2001, when she

was four months old, where she lived until Respondent wrongfully retained her in the United

States when she was six years old.  A copy of the Child's birth certificate is attached as

Exhibit C.

11.   Petitioner and Respondent have never been married to each other.  Petitioner

and Respondent terminated their relationship prior to the birth of the Child.  Petitioner

informed Respondent of her desire to return to Colombia to take care of the Child.  They had

an understanding that Respondent did not have an interest in caring for or keeping the Child

in the United States and that Respondent did not care whether Petitioner returned to

Colombia with the Child.

12.   The Child speaks Spanish with her relatives, was acclimated to her

surroundings, and was thriving in Colombia.

13. Prior to the wrongful retention, and since moving to Columbia, the Child visited the Respondent only once in the United States, for a duration of twenty days for summer vacation.

14. The Child attended pre-school, pre-kindergarten, kindergarten, and first grade in Colombia. She was also enrolled in school prior to the wrongful retention. Copies of the Child's school certificates are attached as Exhibit D.

15. The Child was surrounded by friends and family in Colombia. Copies of photographs from her life in Colombia are attached as Exhibit E.

16. The Child possesses a Colombian National Identity Number through the Colombian Civil Register, which was issued on December 3, 2001. The Child's United States passport is expired and she possesses an unexpired Colombian passport. Copies are attached as Exhibits F, G, and H, respectively.

## PETITIONER POSSESSES CUSTODY RIGHTS
## TO THE CHILD UNDER COLOMBIAN LAW

17. Petitioner has rights of custody by operation of law under Colombian law.[7]

The rights of *patria potestas*,[8] or "parental authority" under Colombian law arise from the

---

[7] Custody rights under the Hague Convention may arise by operation of law, by reason of judicial or administrative decision, or by reason of an agreement having legal effect *under the law of the country of habitual residence*. *See Croll v. Croll*, 299 F.2d at 137; Hague Convention, Art. 3. Thus, the issue of "custody" must be addressed under Colombian law.

[8] Although there is little case law from the Second Circuit addressing the issue of custody rights arising from *patria potestas* rights by operation of law, the vast majority of jurisdictions which have opined on the issue have found that they do for the purposes of establishing custody rights under the Hague Convention. *See e.g., Whallon v. Lynn*, 230 F.3d 450 (1st Cir. 2000); *Lieberman v. Tabachink*, No. 07 cv 02415, 2008 WL 1744353 (D. Colo. April 10, 2008); *Giampaolo v. Erneta*, 390 F. Supp. 2d 1269 (N.D. Ga. 2004); *Lalo v.*

Colombian Civil Code. Title XIV Article 288 provides that "[p]aternal authority is the set of rights that the law acknowledges to the parents of their non-emancipated children" and that, "in the absence of one of the parents, the other parent shall exercise the paternal authority." A copy of the certified translation of the law is attached as Exhibit I.

18. Petitioner is unaware of any custody proceedings Respondent may have commenced in the United States and has never been notified of any such proceedings.

19. There are no written agreements with regard to custody of the Child between Petitioner and Respondent.

20. At the time of Respondent's wrongful retention of the Child, Petitioner was actually exercising custody rights within the meaning of Articles Three and Five of the Hague Convention.[9] Petitioner has had effective custody of the Child since the Child was born. Petitioner has cared and provided for the Child since birth, taken care of the Child's education, and for all intents and purposes has been a single mother since the Child was born.

21. Additionally, Article 338 of the Colombian Minors' Code provides that when a minor leaves the country with one of her parents or with a non-parent, permission of the parent who is not traveling should be obtained and authenticated before a notary or consular authority.[10] Petitioner authorized the travel of the Child in compliance with this law and consistent with her custody rights. A copy of the authorization is attached as Exhibit J.

---

Malca, 318 F. Supp. 2d 1152 (2004); Mendoza v. Miranda, 525 F. Supp. 2d 1182 (C.D. Cal. 2007); In re Application of Adan v. Avans, No. 04-5155, 2007 WL 1850910 (D.N.J. June 25, 2007).

[9]  See Ex. A.

[10]  In Garcia v. Angarita, 440 F. Supp. 2d 1364 (S.D. Fla. 2006), the Southern District of Florida discussed the rights of *patria potestas* under Colombian law in great detail,

## RESPONDENT HAS WRONGFULLY RETAINED
## THE CHILD SINCE JULY 4, 2007

22.   This proceeding is timely because less than one year has elapsed from the

date of Respondent's wrongful removal of the Child.  Thus, pursuant to Article 12 of the

Hague Convention, "[w]here a child has been wrongfully removed or retained in terms of

Article 3 and, at the date of the commencement of the proceeding before the judicial or

administrative authority of the Contracting State where the child is, a period of less than one

year has elapsed from the date of the wrongful removal or retention, the authority concerned

shall return the child forthwith." Ex. A.

23.   Respondent has lived in Queens County, New York since he and Petitioner

met in February 2000.  Respondent is a citizen of Ecuador and a legal alien in the United

States.

24.   On June 9, 2005, after years of not being lawfully involved in the care of the

Child, Respondent voluntarily registered himself as the father of the Child before the

Colombian Consulate in New York and the Child visited Respondent for twenty days of

summer vacation upon the authorization of Petitioner.  Respondent returned the Child to

Colombia as agreed.

25.   In 2007, Respondent asked Petitioner for a second time that the Child be sent

to New York for a month during summer vacation and Petitioner once again authorized the

travel.  Petitioner's authorization was valid from June 27, 2007 through July 27, 2007.  *See*

---

including this provision of the Colombian Minors' Code.  Petitioner is locating a certified
translated copy of this law, however, in an effort to file this petition in a timely manner, may
not be able to produce a copy until the hearing.

Ex. J. The school in which the Child was enrolled also understood the Child would attend school in Colombia following her month-long visit to the United States. A copy of the school's notarized statement is attached as Exhibit K.

26. Respondent purchased a round trip plane ticket, with a departure from Colombia to the United States on June 27, 2007 and a return date of July 27, 2007. A copy of the trip confirmation is attached as Exhibit L.

27. On July 4, 2007 about a week after the Child arrived in the United States, Respondent informed Petitioner by telephone that he wanted to keep the Child in New York. Petitioner implored Respondent not to keep the Child because she would be unable to enter the United States to see the Child due to an infraction from overstaying a valid visa. Nevertheless, in violation of Petitioner's authorization for travel, Respondent did not return the Child on July 27, 2007.

28. The Child told Petitioner that Respondent said he would not allow her to go to Colombia until she turned eighteen years old.

29. From June 27, 2007 until the present, Petitioner has tried to maintain frequent contact with the Child through telephone calls, but Respondent has limited Petitioner's telephone conversations with the Child. Telephone calls are made through Respondent's cell phone, but are supervised and often left unanswered. Petitioner has not seen the Child since June 27, 2007. Through Respondent's actions, Petitioner has not been able to exercise any of her custodial rights as the Child's Mother.[11]

---

[11] "The Second Circuit has noted that Article 1 of the Hague Convention states that a retention or abduction is wrongful when such action is in violation of custody rights granted by the county in which the child was habitually resident immediately before the removal or

30.  Petitioner has requested the return of her Child to Colombia pursuant to her Request for Return, a copy of which is attached as Exhibit M.[12]  The Request for Return has been filed with the United States Department of State and the National Center for Missing and Exploited Children, the Central Authority of the United States under the Hague Convention.  Petitioner is a Colombian citizen, and a habitual resident of the Contracting State of Colombia at the time of the wrongful retention.

### NOTICE OF HEARING

31.  Pursuant to 42 U.S.C. § 11603(c), Respondent shall be given notice pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") and the C.P.L.R.

### ATTORNEYS' FEES AND COSTS

32.  Pursuant to Article 26 of the Hague Convention and 42 U.S.C. § 11607, Petitioner will submit a copy of all expenditures incurred to date by Petitioner as a result of the wrongful retention of Carolina Gutierrez Aguirre by Respondent.

33.  Petitioner reserves the right to amend the expense list from time to time to include further expenditures required as a result of Respondent's wrongful retention of the Child.

---

retention." *Diaz Arboleda v. Arenas,* 311 F. Supp. 2d 336, 341 (E.D.N.Y. 2004) (internal quotation omitted).

[12]  Given the urgency of this Hague Convention Petition, no authentication of any documents or information included with the Petition is required.  42 U.S.C. § 11605 (2005).

## DECLARATION PURSUANT TO THE UNIFORM CHILD CUSTODY
## JURISDICTION AND ENFORCEMENT ACT

34.   The details regarding the Child that are required to be provided under the UCCJEA are as follows:

- The present address of the Child is believed to be 30-44 86th Street, Elmhurst, New York, 11369.

- Other than the above-described address, and the Child's residence in Colombia, Petitioner is not aware of any other address at which the Child has lived since birth.

- Petitioner was and remains located in Colombia.

- Other than the Petitioner and Respondent, Petitioner is not aware of any other persons with whom the Child has lived with since birth.

- Petitioner has not participated, as a party or witness or in any other capacity, in any other proceeding concerning the custody of or visitation with the Child.

- Petitioner does not know of any person or institution not a party to the proceedings who has physical custody of the Child or claims to have rights of parental responsibilities or legal custody or physical custody of, or visitation or parenting time with, the Child.

10

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests the following relief:

a. An Order directing a prompt return of the Child, Carolina Gutierrez Aguirre to her habitual residence of Colombia;

b. An Order directing Respondent to pay Petitioner's legal costs and fees as well as costs of returning the Child to Colombia; and

c. Any such further relief as justice and its cause may require.

Dated:   New York, New York
         June 27, 2008

CHADBOURNE & PARKE LLP

By_____

Oliver Armas (OA 1586)
Thomas J. Hall (TH 3398)
Emily Abrahams (EA 1996)

30 Rockefeller Plaza
New York, New York 10112
(212) 408-5100
Attorneys for Petitioner

11

## VERIFICATION

I, Claudia Gutierrez Aguirre, declare under the penalties of perjury and the laws of the United States of America and New York that the foregoing is true and correct to the best of my knowledge, information and belief.

_____
Claudia Gutierrez Aguirre

Dated: June 27, 2008



T.I.A.S. No. 11670
T.I.A.S. No. 11670, 1988 WL 411501 (Treaty)
(Publication page references are not available for this document.)

United States of America
Multilateral

International Child Abduction Convention Between the United States of
America and Other Governments Done At the Hague October 25, 1980

International Child Abduction

Entered into force December 1, 1983; for the United States July 1, 1988.
Convention done at The Hague October 25, 1980;
Transmitted by the President of the United States of America to the Senate
October 30, 1985 (Treaty Doc. No. 99-11, 99th Cong., 1st Sess.);
Reported favorably by the Senate Committee on Foreign Relations September 19,
1986 (S.Ex.Rept. No. 99-25, 99th Cong., 2d Sess.);
Advice and consent to ratification by the Senate October 9, 1986;
Ratified by the President November 10, 1986;
Ratification of the United States of America deposited April 29, 1988;
Proclaimed by the President November 7, 1988;

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

A PROCLAMATION

Convention on the Civil Aspects of International Child Abduction

CHAPTER I

SCOPE OF THE CONVENTION

Article 1

Article 2

Article 3

Article 4

Article 5

CHAPTER II

CENTRAL AUTHORITIES

Article 6

Article 7

CHAPTER III

RETURN OF CHILDREN

Article 8

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

T.I.A.S. No. 11670
T.I.A.S. No. 11670, 1988 WL 411501 (Treaty)
(Publication page references are not available for this document.)

Article 9

Article 10

Article 11

Article 12

Article 13

Article 14

Article 15

Article 16

Article 17

Article 18

Article 19

Article 20

CHAPTER IV

RIGHTS OF ACCESS

Article 21

CHAPTER V

GENERAL PROVISIONS

Article 22

Article 23

Article 24

Article 25

Article 26

Article 27

Article 28

Article 29

Article 30

Article 31

Article 32

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

T.I.A.S. No. 11670
T.I.A.S. No. 11670, 1988 WL 411501 (Treaty)
(Publication page references are not available for this document.)

Article 33

Article 34

Article 35

Article 36

CHAPTER VI

FINAL CLAUSES

Article 37

Article 38

Article 39

Article 40

Article 41

Article 42

Article 43

Article 44

Article 45

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

A PROCLAMATION

CONSIDERING THAT:

The Convention on the Civil Aspects of International Child Abduction was adopted by the Fourteenth Session of the Hague Conference on Private International Law on October 24, 1980, and was signed on behalf of the United States of America on December 23, 1981, a certified copy of which Convention in the English and French languages is hereto annexed;

The Senate of the United States of America by its resolution of October 9, 1986, two-thirds of the Senators present concurring therein, gave its advice and consent to ratification of the Convention, subject to the following two reservations:
    (1) Pursuant to the second paragraph of Article 24 and Article 42, the United States makes the following reservation: All applications, communications and other documents sent to the U.S. Central Authority should be accompanied by their translation into English.
    (2) Pursuant to the third paragraph of Article 26, the United States declares that it will not be bound to assume any costs or expenses resulting from the participation of legal counsel or advisers or from court and legal proceedings in connection with efforts to return children from the United States pursuant to the Convention except insofar as those costs or expenses are covered by a legal aid program.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

T.I.A.S. No. 11670
T.I.A.S. No. 11670, 1988 WL 411501 (Treaty)
(Publication page references are not available for this document.)

The President of the United States of America ratified the Convention on November 10, 1986, subject to the said reservations, in pursuance of the advice and consent of the Senate;

The United States of America deposited its instrument of ratification with the Ministry of Foreign Affairs of the Kingdom of the Netherlands, on April 29, 1988, in accordance with the provisions of Article 37 of the Convention;

Pursuant to the provision of Article 43 of the Convention, the Convention, subject to the said reservations, entered into force for the United States of America on July 1, 1988;

NOW THEREFORE, I, Ronald Reagan, President of the United States of America, proclaim and make public the Convention, subject to the said reservations, to the end that it be observed and fulfilled with good faith on and after July 1, 1988, by the United States of America and by the citizens of the United States of America and all other persons subject to the jurisdiction thereof.

IN TESTIMONY WHEREOF, I have signed this proclamation and caused the Seal of the United States of America to be affixed.

DONE at the city of Washington this seventh day of November in the year of our Lord one thousand nine hundred eighty-eight and of the Independence of the United States of America the two hundred thirteenth.

By the President:

Ronald Reagan

George P. Shultz

Secretary of State:

Convention on the Civil Aspects of International Child Abduction

The States signatory to the present Convention, [FN1]

FN1. Signature pages not printed.

End of Footnote(s).

Firmly convinced that the interests of children are of paramount importance in matters relating to their custody,

Desiring to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access,

Have resolved to conclude a Convention to this effect, and have agreed upon the following provisions--

CHAPTER I

SCOPE OF THE CONVENTION

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

T.I.A.S. No. 11670
T.I.A.S. No. 11670, 1988 WL 411501 (Treaty)
**(Publication page references are not available for this document.)**

### Article 1

The objects of the present Convention are--
    a to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and
    b to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.

### Article 2

Contracting States shall take all appropriate measures to secure within their territories the implementation of the objects of the Convention. For this purpose they shall use the most expeditious procedures available.

### Article 3

The removal or the retention of a child is to be considered wrongful where--
    a it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
    b at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

The rights of custody mentioned in sub-paragraph a above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

### Article 4

The Convention shall apply to any child who was habitually resident in a Contracting State immediately before any breach of custody or access rights. The Convention shall cease to apply when the child attains the age of 16 years.

### Article 5

For the purposes of this Convention--
    a 'rights of custody' shall include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence;
    b 'rights of access' shall include the right to take a child for a limited period of time to a place other than the child's habitual residence.

### CHAPTER II

### CENTRAL AUTHORITIES

### Article 6

A Contracting State shall designate a Central Authority to discharge the duties which are imposed by the Convention upon such authorities.

Federal States, States with more than one system of law or States having autonomous territorial organizations shall be free to appoint more than one Central Authority and to specify the territorial extent of their powers. Where a State has

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

T.I.A.S. No. 11670                                                    Page 6
T.I.A.S. No. 11670, 1988 WL 411501 (Treaty)
(Publication page references are not available for this document.)

appointed more than one Central Authority, it shall designate the Central Authority
to which applications may be addressed for transmission to the appropriate Central
Authority within that State.

## Article 7

 Central Authorities shall co-operate with each other and promote co-operation
amongst the competent authorities in their respective States to secure the prompt
return of children and to achieve the other objects of this Convention.

 In particular, either directly or through any intermediary, they shall take all
appropriate measures--
   a to discover the whereabouts of a child who has been wrongfully removed or
retained;
   b to prevent further harm to the child or prejudice to interested parties by
taking or causing to be taken provisional measures;
   c to secure the voluntary return of the child or to bring about an amicable
resolution of the issues;
   d to exchange, where desirable, information relating to the social background
of the child;
   e to provide information of a general character as to the law of their State in
connection with the application of the Convention;

   f to initiate or facilitate the institution of judicial or administrative
proceedings with a view to obtaining the return of the child and, in a proper
case, to make arrangements for organizing or securing the effective exercise of
rights of access;
   g where the circumstances so require, to provide or facilitate the provision of
legal aid and advice, including the participation of legal counsel and advisers;
   h to provide such administrative arrangements as may be necessary and
appropriate to secure the safe return of the child;
   i to keep each other informed with respect to the operation of this Convention
and, as far as possible, to eliminate any obstacles to its application.

## CHAPTER III

### RETURN OF CHILDREN

## Article 8

 Any person, institution or other body claiming that a child has been removed or
retained in breach of custody rights may apply either to the Central Authority of
the child's habitual residence or to the Central Authority of any other Contracting
State for assistance in securing the return of the child.

 The application shall contain--
   a information concerning the identity of the applicant, of the child and of the
person alleged to have removed or retained the child;
   b where available, the date of birth of the child;
   c the grounds on which the applicant's claim for return of the child is based;
   d all available information relating to the whereabouts of the child and the
identity of the person with whom the child is presumed to be.

 The application may be accompanied or supplemented by--
   e an authenticated copy of any relevant decision or agreement;
   f a certificate or an affidavit emanating from a Central Authority, or other

                ©  2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

T.I.A.S. No. 11670
T.I.A.S. No. 11670, 1988 WL 411501 (Treaty)
**(Publication page references are not available for this document.)**

competent authority of the State of the child's habitual residence, or from a
qualified person, concerning the relevant law of that State;
   g any other relevant document.

## Article 9

If the Central Authority which receives an application referred to in Article 8
has reason to believe that the child is in another Contracting State, it shall
directly and without delay transmit the application to the Central Authority of
that Contracting State and inform the requesting Central Authority, or the
applicant, as the case may be.

## Article 10

The Central Authority of the State where the child is shall take or cause to be
taken all appropriate measures in order to obtain the voluntary return of the
child.

## Article 11

The judicial or administrative authorities of Contracting States shall act
expeditiously in proceedings for the return of children.

If the judicial or administrative authority concerned has not reached a decision
within six weeks from the date of commencement of the proceedings, the applicant or
the Central Authority of the requested State, on its own initiative or if asked by
the Central Authority of the requesting State, shall have the right to request a
statement of the reasons for the delay. If a reply is received by the Central
Authority of the requested State, that Authority shall transmit the reply to the
Central Authority of the requesting State. or to the applicant, as the case may be.

## Article 12

Where a child has been wrongfully removed or retained in terms of Article 3 and,
at the date of the commencement of the proceedings before the judicial or
administrative authority of the Contracting State where the child is, a period of
less than one year has elapsed from the date of the wrongful removal or retention,
the authority concerned shall order the return of the child forthwith.

The judicial or administrative authority, even where the proceedings have been
commenced after the expiration of the period of one year referred to in the
preceding paragraph, shall also order the return of the child, unless it is
demonstrated that the child is now settled in its new environment.

Where the judicial or administrative authority in the requested State has reason
to believe that the child has been taken to another State, it may stay the
proceedings or dismiss the application for the return of the child.

## Article 13

Notwithstanding the provisions of the preceding Article, the judicial or
administrative authority of the requested State is not bound to order the return of
the child if the person, institution or other body which opposes its return
establishes that--
   a the person, institution or other body having the care of the person of the
   child was not actually exercising the custody rights at the time of removal or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

T.I.A.S. No. 11670
T.I.A.S. No. 11670, 1988 WL 411501 (Treaty)
(Publication page references are not available for this document.)

retention, or had consented to or subsequently acquiesced in the removal or retention; or
  b there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.

The judicial or administrative authority may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views.

In considering the circumstances referred to in this Article, the judicial and administrative authorities shall take into account the information relating to the social background of the child provided by the Central Authority or other competent authority of the child's habitual residence.

Article 14

In ascertaining whether there has been a wrongful removal or retention within the meaning of Article 3, the judicial or administrative authorities of the requested State may take notice directly of the law of, and of judicial or administrative decisions, formally recognized or not in the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law or for the recognition of foreign decisions which would otherwise be applicable.

Article 15

The judicial or administrative authorities of a Contracting State may, prior to the making of an order for the return of the child, request that the applicant obtain from the authorities of the State of the habitual residence of the child a decision or other determination that the removal or retention was wrongful within the meaning of Article 3 of the Convention, where such a decision or determination may be obtained in that State. The Central Authorities of the Contracting States shall so far as practicable assist applicants to obtain such a decision or determination.

Article 16

After receiving notice of a wrongful removal or retention of a child in the sense of Article 3, the judicial or administrative authorities of the Contracting State to which the child has been removed or in which it has been retained shall not decide on the merits of rights of custody until it has been determined that the child is not to be returned under this Convention or unless an application under this Convention is not lodged within a reasonable time following receipt of the notice.

Article 17

The sole fact that a decision relating to custody has been given in or is entitled to recognition in the requested State shall not be a ground for refusing to return a child under this Convention, but the judicial or administrative authorities of the requested State may take account of the reasons for that decision in applying this Convention.

Article 18

The provisions of this Chapter do not limit the power of a judicial or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 9
T.I.A.S. No. 11670
T.I.A.S. No. 11670, 1988 WL 411501 (Treaty)
(Publication page references are not available for this document.)

administrative authority to order the return of the child at any time.

## Article 19

A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue.

## Article 20

The return of the child under the provisions of Article 12 may be refused if this would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms.

## CHAPTER IV

## RIGHTS OF ACCESS

## Article 21

An application to make arrangements for organizing or securing the effective exercise of rights of access may be presented to the Central Authorities of the Contracting States in the same way as an application for the return of a child.

The Central Authorities are bound by the obligations of co-operation which are set forth in Article 7 to promote the peaceful enjoyment of access rights and the fulfilment of any conditions to which the exercise of those rights may be subject. The Central Authorities shall take steps to remove, as far as possible, all obstacles to the exercise of such rights.

The Central Authorities, either directly or through intermediaries, may initiate or assist in the institution of proceedings with a view to organizing or protecting these rights and securing respect for the conditions to which the exercise of these rights may be subject.

## CHAPTER V

## GENERAL PROVISIONS

## Article 22

No security, bond or deposit, however described, shall be required to guarantee the payment of costs and expenses in the judicial or administrative proceedings falling within the scope of this Convention.

## Article 23

No legalization or similar formality may be required in the context of this Convention.

## Article 24

Any application, communication or other document sent to the Central Authority of the requested State shall be in the original language, and shall be accompanied by a translation into the official language or one of the official languages of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

T.I.A.S. No. 11670
T.I.A.S. No. 11670, 1988 WL 411501 (Treaty)
**(Publication page references are not available for this document.)**

requested State or, where that is not feasible, a translation into French or English.

However, a Contracting State may, by making a reservation in accordance with Article 42, object to the use of either French or English, but not both, in any application, communication or other document sent to its Central Authority. [FN1]

FN1. See U.S. reservations, supra, p. 2.

End of Footnote(s).

Article 25

Nationals of the Contracting States and persons who are habitually resident within those States shall be entitled in matters concerned with the application of this Convention to legal aid and advice in any other Contracting State on the same conditions as if they themselves were nationals of and habitually resident in that State.

Article 26

Each Central Authority shall bear its own costs in applying this Convention.

Central Authorities and other public services of Contracting States shall not impose any charges in relation to applications submitted under this Convention. In particular, they may not require any payment from the applicant towards the costs and expenses of the proceedings or, where applicable, those arising from the participation of legal counsel or advisers. However, they may require the payment of the expenses incurred or to be incurred in implementing the return of the child.

However, a Contracting State may, by making a reservation in accordance with Article 42, declare that it shall not be bound to assume any costs referred to in the preceding paragraph resulting from the participation of legal counsel or advisers or from court proceedings, except insofar as those costs may be covered by its system of legal aid and advice. [FN1]

FN1. Ibid.

End of Footnote(s).

Upon ordering the return of a child or issuing an order concerning rights of access under this Convention, the judicial or administrative authorities may, where appropriate, direct the person who removed or retained the child, or who prevented the exercise of rights of access, to pay necessary expenses incurred by or on behalf of the applicant, including travel expenses, any costs incurred or payments made for locating the child, the costs of legal representation of the applicant, and those of returning the child.

Article 27

When it is manifest that the requirements of this Convention are not fulfilled or that the application is otherwise not well founded, a Central Authority is not bound to accept the application. In that case, the Central Authority shall forthwith inform the applicant or the Central Authority through which the application was submitted, as the case may be, of its reasons.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

T.I.A.S. No. 11670
T.I.A.S. No. 11670, 1988 WL 411501 (Treaty)
(Publication page references are not available for this document.)

Page 11

### Article 28

A Central Authority may require that the application be accompanied by a written authorization empowering it to act on behalf of the applicant, or to designate a representative so to act.

### Article 29

This Convention shall not preclude any person, institution or body who claims that there has been a breach of custody or access rights within the meaning of Article 3 or 21 from applying directly to the judicial or administrative authorities of a Contracting State, whether or not under the provisions of this Convention.

### Article 30

Any application submitted to the Central Authorities or directly to the judicial or administrative authorities of a Contracting State in accordance with the terms of this Convention, together with documents and any other information appended thereto or provided by a Central Authority, shall be admissible in the courts or administrative authorities of the Contracting States.

### Article 31

In relation to a State which in matters of custody of children has two or more systems of law applicable in different territorial units--
    a any reference to habitual residence in that State shall be construed as referring to habitual residence in a territorial unit of that State;
    b any reference to the law of the State of habitual residence shall be construed as referring to the law of the territorial unit in that State where the child habitually resides.

### Article 32

In relation to a State which in matters of custody of children has two or more systems of law applicable to different categories of persons, any reference to the law of that State shall be construed as referring to the legal system specified by the law of that State.

### Article 33

A State within which different territorial units have their own rules of law in respect of custody of children shall not be bound to apply this Convention where a State with a unified system of law would not be bound to do so.

### Article 34

This Convention shall take priority in matters within its scope over the Convention of 5 October 1961 concerning the powers of authorities and the law applicable in respect of the protection of minors, [FN1] as between Parties to both Conventions. Otherwise the present Convention shall not restrict the application of an international instrument in force between the State of origin and the State addressed or other law of the State addressed for the purposes of obtaining the return of a child who has been wrongfully removed or retained or of organizing access rights.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

T.I.A.S. No. 11670                                                    Page 12
T.I.A.S. No. 11670, 1988 WL 411501 (Treaty)
(Publication page references are not available for this document.)

FN1. 658 UNTS 143.

End of Footnote(s).

Article 35

This Convention shall apply as between Contracting States only to wrongful removals or retentions occurring after its entry into force in those States.

Where a declaration has been made under Article 39 or 40, the reference in the preceding paragraph to a Contracting State shall be taken to refer to the territorial unit or units in relation to which this Convention applies.

Article 36

Nothing in this Convention shall prevent two or more Contracting States, in order to limit the restrictions to which the return of the child may be subject, from agreeing among themselves to derogate from any provisions of this Convention which may imply such a restriction.

CHAPTER VI

FINAL CLAUSES

Article 37

The Convention shall be open for signature by the States which were Members of the Hague Conference on Private International Law at the time of its Fourteenth Session. [FN2]

FN2. TIAS 5710; 15 UST 2228.

End of Footnote(s).

It shall be ratified, accepted or approved and the instruments of ratification, acceptance or approval shall be deposited with the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

Article 38

Any other State may accede to the Convention.

The instrument of accession shall be deposited with the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

The Convention shall enter into force for a State acceding to it on the first day of the third calendar month after the deposit of its instrument of accession.

The accession will have effect only as regards the relations between the acceding State and such Contracting States as will have declared their acceptance of the accession. Such a declaration will also have to be made by any Member State ratifying, accepting or approving the Convention after an accession. Such declaration shall be deposited at the Ministry of Foreign Affairs of the Kingdom of the Netherlands; this Ministry shall forward, through diplomatic channels, a certified copy to each of the Contracting States.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

T.I.A.S. No. 11670                                                    Page 13
T.I.A.S. No. 11670, 1988 WL 411501 (Treaty)
**(Publication page references are not available for this document.)**

The Convention will enter into force as between the acceding State and the State that has declared its acceptance of the accession on the first day of the third calendar month after the deposit of the declaration of acceptance.

### Article 39

Any State may, at the time of signature, ratification, acceptance, approval or accession, declare that the Convention shall extend to all the territories for the international relations of which it is responsible, or to one or more of them. Such a declaration shall take effect at the time the Convention enters into force for that State.

Such declaration, as well as any subsequent extension, shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

### Article 40

If a Contracting State has two or more territorial units in which different systems of law are applicable in relation to matters dealt with in this Convention, it may at the time of signature, ratification, acceptance, approval or accession declare that this Convention shall extend to all its territorial units or only to one or more of them and may modify this declaration by submitting another declaration at any time.

Any such declaration shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands and shall state expressly the territorial units to which the Convention applies.

### Article 41

Where a Contracting State has a system of government under which executive, judicial and legislative powers are distributed between central and other authorities within that State, its signature or ratification, acceptance or approval of, or accession to this Convention, or its making of any declaration in terms of Article 40 shall carry no implication as to the internal distribution of powers within that State.

### Article 42

Any State may, not later than the time of ratification, acceptance, approval or accession, or at the time of making a declaration in terms of Article 39 or 40, make one or both of the reservations provided for in Article 24 and Article 26, third paragraph. [FN1] No other reservation shall be permitted.

FN1. See U.S. reservations, supra, p. 2.

### End of Footnote(s).

Any State may at any time withdraw a reservation it has made. The withdrawal shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

The reservation shall cease to have effect on the first day of the third calendar month after the notification referred to in the preceding paragraph.

### Article 43

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

T.I.A.S. No. 11670                                                      Page 14
T.I.A.S. No. 11670, 1988 WL 411501 (Treaty)
(Publication page references are not available for this document.)

The Convention shall enter into force on the first day of the third calendar month after the deposit of the third instrument of ratification, acceptance, approval or accession referred to in Articles 37 and 38. [FN2]

FN2. Dec. 1, 1983.

                              End of Footnote(s).

Thereafter the Convention shall enter into force--
    1 for each State ratifying, accepting, approving or acceding to it subsequently, on the first day of the third calendar month after the deposit of its instrument of ratification, acceptance, approval or accession;
    2 for any territory or territorial unit to which the Convention has been extended in conformity with Article 39 or 40, on the first day of the third calendar month after the notification referred to in that Article.

                              Article 44

The Convention shall remain in force for five years from the date of its entry into force in accordance with the first paragraph of Article 43 even for States which subsequently have ratified, accepted, approved it or acceded to it. If there has been no denunciation, it shall be renewed tacitly every five years.

Any denunciation shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands at least six months before the expiry of the five-year period. It may be limited to certain of the territories or territorial units to which the Convention applies.


The denunciation shall have effect only as regards the State which has notified it. The Convention shall remain in force for the other Contracting States.

                              Article 45

The Ministry of Foreign Affairs of the Kingdom of the Netherlands shall notify the States Members of the Conference, and the States which have acceded in accordance with Article 38, of the following--
    1 the signatures and ratifications, acceptances and approvals referred to in Article 37;
    2 the accessions referred to in Article 38;
    3 the date on which the Convention enters into force in accordance with Article 43;
    4 the extensions referred to in Article 39;
    5 the declarations referred to in Articles 38 and 40;
    6 the reservations referred to in Article 24 and Article 26, third paragraph, and the withdrawals referred to in Article 42;
    7 the denunciations referred to in Article 44.

IN WITNESS WHEREOF the undersigned, being duly authorized thereto, have signed this Convention.

DONE at The Hague, on the 25th day of October 1980 in the English and French languages, both texts being equally authentic, in a single copy which shall be deposited in the archives of the Government of the Kingdom of the Netherlands, and of which a certified copy shall be sent, through diplomatic channels, to each of the States Members of the Hague Conference on Private International Law at the date

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

T.I.A.S. No. 11670
T.I.A.S. No. 11670, 1988 WL 411501 (Treaty)                                           Page 15
**(Publication page references are not available for this document.)**

of its Fourteenth Session.

T.I.A.S. No. 11670, 1988 WL 411501 (Treaty)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

United States Code Annotated <u>Currentness</u>
   Title 42. The Public Health and Welfare
      Chapter 121. International Child Abduction Remedies
         ➡ **§ 11601. Findings and declarations**

(a) Findings

  The Congress makes the following findings:

    **(1)** The international abduction or wrongful retention of children is harmful to their well-being.

    **(2)** Persons should not be permitted to obtain custody of children by virtue of their wrongful removal or retention.

    **(3)** International abductions and retentions of children are increasing, and only concerted cooperation pursuant to an international agreement can effectively combat this problem.

    **(4)** The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980, establishes legal rights and procedures for the prompt return of children who have been wrongfully removed or retained, as well as for securing the exercise of visitation rights. Children who are wrongfully removed or retained within the meaning of the Convention are to be promptly returned unless one of the narrow exceptions set forth in the Convention applies. The Convention provides a sound treaty framework to help resolve the problem of international abduction and retention of children and will deter such wrongful removals and retentions.

(b) Declarations

  The Congress makes the following declarations:

    **(1)** It is the purpose of this chapter to establish procedures for the implementation of the Convention in the United States.

    **(2)** The provisions of this chapter are in addition to and not in lieu of the provisions of the Convention.

    **(3)** In enacting this chapter the Congress recognizes--

      **(A)** the international character of the Convention; and

      **(B)** the need for uniform international interpretation of the Convention.

    **(4)** The Convention and this chapter empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## § 11602. Definitions

For the purposes of this chapter--

(1) the term "applicant" means any person who, pursuant to the Convention, files an application with the United States Central Authority or a Central Authority of any other party to the Convention for the return of a child alleged to have been wrongfully removed or retained or for arrangements for organizing or securing the effective exercise of rights of access pursuant to the Convention;

(2) the term "Convention" means the Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980;

(3) the term "Parent Locator Service" means the service established by the Secretary of Health and Human Services under section 653 of this title;

(4) the term "petitioner" means any person who, in accordance with this chapter, files a petition in court seeking relief under the Convention;

(5) the term "person" includes any individual, institution, or other legal entity or body;

(6) the term "respondent" means any person against whose interests a petition is filed in court, in accordance with this chapter, which seeks relief under the Convention;

(7) the term "rights of access" means visitation rights;

(8) the term "State" means any of the several States, the District of Columbia, and any commonwealth, territory, or possession of the United States; and

(9) the term "United States Central Authority" means the agency of the Federal Government designated by the President under section 11606(a) of this title.

## § 11603. Judicial remedies

(a) Jurisdiction of courts

The courts of the States and the United States district courts shall have concurrent original jurisdiction of actions arising under the Convention.

(b) Petitions

Any person seeking to initiate judicial proceedings under the Convention for the return of a child or for arrangements for organizing or securing the effective exercise of rights of access to a child may do so by commencing a civil action by filing a petition for the relief sought in any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed.

(c) Notice

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Notice of an action brought under subsection (b) of this section shall be given in accordance with the applicable law governing notice in interstate child custody proceedings.

(d) Determination of case

The court in which an action is brought under subsection (b) of this section shall decide the case in accordance with the Convention.

(e) Burdens of proof

(1) A petitioner in an action brought under subsection (b) of this section shall establish by a preponderance of the evidence--

(A) in the case of an action for the return of a child, that the child has been wrongfully removed or retained within the meaning of the Convention; and

(B) in the case of an action for arrangements for organizing or securing the effective exercise of rights of access, that the petitioner has such rights.

(2) In the case of an action for the return of a child, a respondent who opposes the return of the child has the burden of establishing--

(A) by clear and convincing evidence that one of the exceptions set forth in article 13b or 20 of the Convention applies; and

(B) by a preponderance of the evidence that any other exception set forth in article 12 or 13 of the Convention applies.

(f) Application of Convention

For purposes of any action brought under this chapter--

(1) the term "authorities", as used in article 15 of the Convention to refer to the authorities of the state of the habitual residence of a child, includes courts and appropriate government agencies;

(2) the terms "wrongful removal or retention" and "wrongfully removed or retained", as used in the Convention, include a removal or retention of a child before the entry of a custody order regarding that child; and

(3) the term "commencement of proceedings", as used in article 12 of the Convention, means, with respect to the return of a child located in the United States, the filing of a petition in accordance with subsection (b) of this section.

(g) Full faith and credit

Full faith and credit shall be accorded by the courts of the States and the courts of the United States to the judgment of any other such court ordering or denying the return of a child, pursuant to the Convention, in an action brought under this chapter.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(h) Remedies under Convention not exclusive

The remedies established by the Convention and this chapter shall be in addition to remedies available under other laws or international agreements.

## § 11604. Provisional remedies

(a) Authority of courts

In furtherance of the objectives of article 7(b) and other provisions of the Convention, and subject to the provisions of subsection (b) of this section, any court exercising jurisdiction of an action brought under section 11603(b) of this title may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition.

(b) Limitation on authority

No court exercising jurisdiction of an action brought under section 11603(b) of this title may, under subsection (a) of this section, order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied.

## § 11605. Admissibility of documents

With respect to any application to the United States Central Authority, or any petition to a court under section 11603 of this title, which seeks relief under the Convention, or any other documents or information included with such application or petition or provided after such submission which relates to the application or petition, as the case may be, no authentication of such application, petition, document, or information shall be required in order for the application, petition, document, or information to be admissible in court.

## § 11606. United States Central Authority

(a) Designation

The President shall designate a Federal agency to serve as the Central Authority for the United States under the Convention.

(b) Functions

The functions of the United States Central Authority are those ascribed to the Central Authority by the Convention and this chapter.

(c) Regulatory authority

The United States Central Authority is authorized to issue such regulations as may be necessary to carry out its functions under the Convention and this chapter.

(d) Obtaining information from Parent Locator Service

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The United States Central Authority may, to the extent authorized by the Social Security Act [42 U.S.C.A. § 301 et seq.], obtain information from the Parent Locator Service.

(e) Grant Authority

The United States Central Authority is authorized to make grants to, or enter into contracts or agreements with, any individual, corporation, other Federal, State, or local agency, or private entity or organization in the United States for purposes of accomplishing its responsibilities under the Convention and this chapter.

(f) Limited liability of private entities acting under the direction of the United States central authority

(1) Limitation on liability

Except as provided in paragraphs (2) and (3), a private entity or organization that receives a grant from or enters into a contract or agreement with the United States Central Authority under subsection (e) of this section for purposes of assisting the United States Central Authority in carrying out its responsibilities and functions under the Convention and this chapter, including any director, officer, employee, or agent of such entity or organization, shall not be liable in any civil action sounding in tort for damages directly related to the performance of such responsibilities and functions as defined by the regulations issued under subsection (c) of this section that are in effect on October 1, 2004.

(2) Exception for intentional, reckless, or other misconduct

The limitation on liability under paragraph (1) shall not apply in any action in which the plaintiff proves that the private entity, organization, officer, employee, or agent described in paragraph (1), as the case may be, engaged in intentional misconduct or acted, or failed to act, with actual malice, with reckless disregard to a substantial risk of causing injury without legal justification, or for a purpose unrelated to the performance of responsibilities or functions under this chapter.

(3) Exception for ordinary business activities

The limitation on liability under paragraph (1) shall not apply to any alleged act or omission related to an ordinary business activity, such as an activity involving general administration or operations, the use of motor vehicles, or personnel management.

### § 11607. Costs and fees

(a) Administrative costs

No department, agency, or instrumentality of the Federal Government or of any State or local government may impose on an applicant any fee in relation to the administrative processing of applications submitted under the Convention.

(b) Costs incurred in civil actions

(1) Petitioners may be required to bear the costs of legal counsel or advisors, court costs incurred in connection with their petitions, and travel costs for the return of the child involved and any accompanying persons, except as provided in paragraphs (2) and (3).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**(2)** Subject to paragraph (3), legal fees or court costs incurred in connection with an action brought under section 11603 of this title shall be borne by the petitioner unless they are covered by payments from Federal, State, or local legal assistance or other programs.

**(3)** Any court ordering the return of a child pursuant to an action brought under section 11603 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

### § 11608. Collection, maintenance, and dissemination of information

(a) In general

In performing its functions under the Convention, the United States Central Authority may, under such conditions as the Central Authority prescribes by regulation, but subject to subsection (c) of this section, receive from or transmit to any department, agency, or instrumentality of the Federal Government or of any State or foreign government, and receive from or transmit to any applicant, petitioner, or respondent, information necessary to locate a child or for the purpose of otherwise implementing the Convention with respect to a child, except that the United States Central Authority--

**(1)** may receive such information from a Federal or State department, agency, or instrumentality only pursuant to applicable Federal and State statutes; and

**(2)** may transmit any information received under this subsection notwithstanding any provision of law other than this chapter.

(b) Requests for information

Requests for information under this section shall be submitted in such manner and form as the United States Central Authority may prescribe by regulation and shall be accompanied or supported by such documents as the United States Central Authority may require.

(c) Responsibility of government entities

Whenever any department, agency, or instrumentality of the United States or of any State receives a request from the United States Central Authority for information authorized to be provided to such Central Authority under subsection (a) of this section, the head of such department, agency, or instrumentality shall promptly cause a search to be made of the files and records maintained by such department, agency, or instrumentality in order to determine whether the information requested is contained in any such files or records. If such search discloses the information requested, the head of such department, agency, or instrumentality shall immediately transmit such information to the United States Central Authority, except that any such information the disclosure of which--

**(1)** would adversely affect the national security interests of the United States or the law enforcement interests of the United States or of any State; or

**(2)** would be prohibited by section 9 of Title 13;

shall not be transmitted to the Central Authority. The head of such department, agency, or instrumentality shall, immediately upon completion of the requested search, notify the Central Authority of the results of the search, and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

whether an exception set forth in paragraph (1) or (2) applies. In the event that the United States Central Authority receives information and the appropriate Federal or State department, agency, or instrumentality thereafter notifies the Central Authority that an exception set forth in paragraph (1) or (2) applies to that information, the Central Authority may not disclose that information under subsection (a) of this section.

(d) Information available from Parent Locator Service

To the extent that information which the United States Central Authority is authorized to obtain under the provisions of subsection (c) of this section can be obtained through the Parent Locator Service, the United States Central Authority shall first seek to obtain such information from the Parent Locator Service, before requesting such information directly under the provisions of subsection (c) of this section.

(e) Recordkeeping

The United States Central Authority shall maintain appropriate records concerning its activities and the disposition of cases brought to its attention.

### § 11608a. Office of Children's Issues

(a) Director requirements

The Secretary of State shall fill the position of Director of the Office of Children's Issues of the Department of State (in this section referred to as the "Office") with an individual of senior rank who can ensure long-term continuity in the management and policy matters of the Office and has a strong background in consular affairs.

(b) Case officer staffing

Effective April 1, 2000, there shall be assigned to the Office of Children's Issues of the Department of State a sufficient number of case officers to ensure that the average caseload for each officer does not exceed 75.

(c) Embassy contact

The Secretary of State shall designate in each United States diplomatic mission an employee who shall serve as the point of contact for matters relating to international abductions of children by parents. The Director of the Office shall regularly inform the designated employee of children of United States citizens abducted by parents to that country.

(d) Reports to parents

(1) In general

Except as provided in paragraph (2), beginning 6 months after November 29, 1999, and at least once every 6 months thereafter, the Secretary of State shall report to each parent who has requested assistance regarding an abducted child overseas. Each such report shall include information on the current status of the abducted child's case and the efforts by the Department of State to resolve the case.

(2) Exception

The requirement in paragraph (1) shall not apply in a case of an abducted child if--

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**(A)** the case has been closed and the Secretary of State has reported the reason the case was closed to the parent who requested assistance; or

**(B)** the parent seeking assistance requests that such reports not be provided.

## § 11609. Interagency coordinating group

The Secretary of State, the Secretary of Health and Human Services, and the Attorney General shall designate Federal employees and may, from time to time, designate private citizens to serve on an interagency coordinating group to monitor the operation of the Convention and to provide advice on its implementation to the United States Central Authority and other Federal agencies. This group shall meet from time to time at the request of the United States Central Authority. The agency in which the United States Central Authority is located is authorized to reimburse such private citizens for travel and other expenses incurred in participating at meetings of the interagency coordinating group at rates not to exceed those authorized under subchapter I of chapter 57 of Title 5 for employees of agencies.

## § 11610. Authorization of appropriations

There are authorized to be appropriated for each fiscal year such sums as may be necessary to carry out the purposes of the Convention and this chapter.

## § 11611. Report on compliance with the Hague Convention on International Child Abduction

(a) In general

Beginning 6 months after October 21, 1998 and every 12 months thereafter, the Secretary of State shall submit a report to the appropriate congressional committees on the compliance with the provisions of the Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980, by the signatory countries of the Convention. Each such report shall include the following information:

**(1)** The number of applications for the return of children submitted by applicants in the United States to the Central Authority for the United States that remain unresolved more than 18 months after the date of filing.

**(2)** A list of the countries to which children in unresolved applications described in paragraph (1) are alleged to have been abducted, are being wrongfully retained in violation of United States court orders, or which have failed to comply with any of their obligations under such convention with respect to applications for the return of children, access to children, or both, submitted by applicants in the United States.

**(3)** A list of the countries that have demonstrated a pattern of noncompliance with the obligations of the Convention with respect to applications for the return of children, access to children, or both, submitted by applicants in the United States to the Central Authority for the United States.

**(4)** Detailed information on each unresolved case described in paragraph (1) and on actions taken by the Department of State to resolve each such case, including the specific actions taken by the United States chief of mission in the country to which the child is alleged to have been abducted.

**(5)** Information on efforts by the Department of State to encourage other countries to become signatories of the Convention.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(6) A list of the countries that are parties to the Convention in which, during the reporting period, parents who have been left-behind in the United States have not been able to secure prompt enforcement of a final return or access order under a Hague proceeding, of a United States custody, access, or visitation order, or of an access or visitation order by authorities in the country concerned, due to the absence of a prompt and effective method for enforcement of civil court orders, the absence of a doctrine of comity, or other factors.

(7) A description of the efforts of the Secretary of State to encourage the parties to the Convention to facilitate the work of nongovernmental organizations within their countries that assist parents seeking the return of children under the Convention.

(b) Definition

In this section, the term "Central Authority for the United States" has the meaning given the term in Article 6 of the Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980.

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# THE CITY OF NEW YORK

## VITAL RECORDS CERTIFICATE

## CERTIFICATE OF BIRTH

Birth No. 100-108000

DATE FILED

2000 NOV 20

| | | | |
|---|---|---|---|
| **1 FULL NAME OF CHILD** | First Name: Carolina | Middle Name | Last Name: Espinosa-Gutierrez |

| | | | | |
|---|---|---|---|---|
| **1 SEX** Female | **3a. NUMBER DELIVERED** / 3b. If more than one, number of this child in order of delivery | **4a. DATE OF CHILD'S BIRTH** (Month) (Day) (Year): November 11, 2000 | **4b. HOUR** 05:09 AM | |

| | | | |
|---|---|---|---|
| **5 PLACE OF BIRTH** | **5a.** NEW YORK CITY, BOROUGH OF Queens | **5b.** Name of Hospital (if not in institution, street address): ELMHURST HOSPITAL CENTER | **5c. TYPE OF PLACE** Hospital |

| | | |
|---|---|---|
| **6a. MOTHER'S FULL MAIDEN NAME** Claudia E. Gutierrez | **6b. MOTHER'S DATE OF BIRTH** 03/14/1971 | **6c. MOTHER'S BIRTHPLACE** Colombia |

| | | | | |
|---|---|---|---|---|
| **7. MOTHER'S USUAL RESIDENCE** a. State / b. County: Queens | City/Town/Location: Flushing | Street and number: 97-28-57 Avenue | Zip 11368 | **7a. Inside city limits of 7c?** Yes |

| | | |
|---|---|---|
| **8a. FATHER'S FULL NAME** | **8b. FATHER'S DATE OF BIRTH** | **8c. FATHER'S BIRTHPLACE** |

| | |
|---|---|
| **9. NAME OF ATTENDANT** L. Jacobs, M.D. | |

(Reason)

Date    City Registrar

### VITAL RECORDS    DEPARTMENT OF HEALTH    THE CITY OF NEW YORK

MOTHER'S MAILING ADDRESS

Claudia E Gutierrez
97-28-57 Avenue    Apt. 15G
Flushing, NY 11368

This is to certify that the foregoing is a true copy of a record on file in the Department of Health. The Department of Health does not certify to the truth of the statements made thereon, as no inquiry as to the facts has been provided by law.

City Registrar, M.D., City Registrar

Do not accept this transcript unless it bears the raised seal of the Department of Health. Reproduction of this form is prohibited by §3.21 of the New York City Health Code. Use for purposes the evasion or violation of any provision of the Health Code or any other law.

DATE ISSUED    SEPTEMBER 07, 2001    DOCUMENT NO. 1235873

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE


The City of New York

Medellín, Julio 31 de 2007

A  Q U I E N  P U E D A  I N T E R E S A R

Certificamos que CAROLINA ESPINOSA GUTIERREZ, identificada con REGISTRO CIVIL No.33261363, estuvo matriculada en esta institución desde el año 2003 hasta el año 2005, cursando los niveles PARVULOS, PREJARDIN Y JARDIN; correspondientes a EDUCACION PREESCOLAR.

Cualquier información adicional, gustosamente la atenderemos en el teléfono 285 23 00.

Atentamente,

MARY SANCHEZ L.
Directora
c.c. 21'422.127



Jardín Guardería          Amar, Crecer, Soñar



## Institución Educativa Enrique Vélez Escobar

Sección Bachillerato:  Cra. 52C No. 72-69 - Tel. 281 60 23 - Telefax: 281 60 04
Sección Providencia:  Tel. 277 59 67  -  Sección Arnulfo Flórez:  Tel. 285 26 68
Itagüí - Antioquia

### SECCIÓN PROVIDENCIA

La suscrita coordinadora  TERESITA SALDARRIAGA BEDOYA,  de la Institución Educativa Enrique Vélez Escobar Sección   Providencia hace constar que   la estudiante:  CAROLINA  GUTIERREZ  AGUIRRE identificada con el registro civil: Indicativo serial 33261363; Terminó en este establecimiento el grado Primero B en el año 2006; aprobando su curso satisfactoriamente.

Y se encuentra a paz y salvo por todo concepto.

Dado en Itagüí,   a los 03  días del mes de  Agosto   del 2007

INST. ED. E.V.E.
Sección Providencia
Coordinadora

TERESITA SALDARRIAGA BEDOYA

**COORDINADORA**

Tel: 2775967  -  2778315

*Bertha Luz Rendón G.*
**BERTHA LUZ RENDÓN**

**EDUCADORA**

INST. ED. E. V. E.
Sección Providencia
Coordinadora

---

*"La formación integral; nuestra mejor inversión"*

# Informe Académico del Estudiante

Estudiante    GUTIERREZ AGUIRRE CAROLINA                                        Pág. 35
Carnet        006493

| | Grado | Grupo | Periodo | Jornada |
|---|---|---|---|---|
| | 01 | B | 3 | Tarde |

| Áreas | Descripción del Indicador | Concepto | Faltas |
|---|---|---|---|
| **EDUCACION RELIGIOSA**<br>Reflexiono y doy gracias a ese ser supremo en forma individual y grupal<br>Reconozco la predecia de un ser supremo en nuestras vidas | | Excelente | |
| **CIENCIAS SOCIALES: Hist., Geogr., Const. P. y D.**<br>Reconozco la importancia de la familia y su conformaciòn<br>Identifico las diferentes partes de la casa y su utilidad | | Excelente | |
| **HUMAN: LENGUA CASTELLANA**<br>Algunas veces leo y escribo correctamente palabras, oraciones y textos cortos<br>Se me dificulta leer comprensivamente textos cortos<br>Posee buena caligrafìa de acuerdo a mi nivel<br>Se me dificulta narrar con coherencia cuentos e historias | | Sobresalien | |
| **HUMAN: IDIOMA EXTR- Inglés**<br>Manifiesto interès a las actividàdes del àrea<br>Pronuncio algunos colores en inglès | | Excelente | |
| **CIENCIAS NATURALES: Ed. Ambiental**<br>Describo los seres vivos segùn sus caracterìsticas<br>Identifico los seres vivos y no vivos | | Excelente | |
| **MATEMATICAS**<br>Algunas veces realizo ejercicios de càlculo mental y escrito<br>Algunas veces escribo los numeros en orden ascendente y descendente<br>Algunas veces diferencio las lìneas rectas y curvas<br>Identifico las partes del reloj | | Sobresalien | |
| **EDU. ETICA Y VALORES HUMANOS**<br>Cuido y respeto mis bienes y el de los demàs<br>Praactico hàbitos de higiene y orden<br>Trabajo con entusiasmo y dedicaciòn en mis cuadernos y fichas | | Excelente | |
| **EDU. FISICA RECREACION Y DEPORTES**<br>Comparto con mis compañeros actividades lùdicas y recreativas<br>Participo activamente en la recreaciòn, deporte y danzas | | Excelente | |
| **EDUCACION ARTISTICA**<br>Realizo trabajos con materiales de desecho<br>Realizo mis trabajos con orden y creatividad | | Excelente | |
| **TECNOLOGIA E INFORMATICA**<br>Maneja los implementos de trabajo<br>Realizo mis trabajos con gran creatividad y orden | | Excelente | |

**Boletin Informat** , **Codigo:** **Grado:** **Seccion:** **Informe Pe** **do:** **Jornada:** **Nivel:** 19/06/2007
205285    02    02    2    MAÑANA    Básica Primaria

INSTITUCION EDUCATIVA AVELINO SALDARRIAGA

**Apellidos y Nombres:** GUTIERREZ AGUIRRE CAROLINA

| Materias: | Cpto: | F: |
|---|---|---|
| **CIENCIAS NAT.Y ED.AMBIEN** | Excelente | 0 |

** FORTALEZAS **
VALORA LA IMPORTANCIA DEL AGUA PARA LOS SERES VIVOS
COMPRENDE QUE EL AGUA SE PUEDE ENCONTRAR EN TRES ESTADOS SOLIDO - LIQUIDO Y GASEOSO
COMPRENDE QUE LAS PLANTAS Y LOS ANIMALES SE ADAPTAN A LAS CARACTERÍSTICAS DEL LUGAR DONDE VIVEN
CLASIFICA LOS ANIMALES SEGUN SU FORMA DE ALIMENTO HERVIBOROS, CARNIVOROS, OMNIVOROS

| **EDUCACION ARTISTICA** | Excelente | 0 |
|---|---|---|

** FORTALEZAS **
MANIFIESTA SENSIBILIDAD Y CREATIVIDAD A TRAVES DE LA EXPRESIÓN ARTISTICA
RECONOCE LOS ELEMENTOS DEL DIBUJO Y LOS COLORES

| **EDUCACION FÍSICA, RECR.Y DEPOR** | Excelente | 0 |
|---|---|---|

** FORTALEZAS **
AFIANZA DESTREZAS QUE CONTRIBUYEN AL MEJORAMIENTO DE LA AGILIDAD
EJECUTA VARIOS EJERCICIOS COMO EL PASE DEL BALON, EL PELOTEO, DRIBLING CON LA MANO DERECHA, LA IZQUIERDA
REALIZA ACTIVIDADES LUDICAS DE ACUERDO A LAS INDICACIONES DEL PROFESOR

| **MATEMATICAS** | Excelente | 0 |
|---|---|---|

** FORTALEZAS **
LEE, ESCRIBE Y COMPARA NUMEROS DE 4 DIGITOS
REALIZA SERIACIONES, SECUENCIAS, DESCOMPOSICIONES CON NUMERO DE 4 DIGITOS
IDENTIFICA LOS TERMINOS DE LA SUMA Y DELA RESTA

| **TECNOLOGIA E INFORMATICA** | Excelente | 0 |
|---|---|---|

** FORTALEZAS **
DA CUENTA DE LA EVOLUCIÓN DE LA ESCRITURA DESDE SU INICIO HASTA NUESTROS DIAS
RECONOCE LA IMPORTANCIA DE LOS MEDIOS DE COMUNICACIÓN
SE APROPIA DE LA INFORMACIÓN QUE LE BRINDA LA RADIO

| **CONVIVENCIA ESCOLAR Y SOCIAL** | Excelente | 0 |
|---|---|---|

** FORTALEZAS **
ES CUIDADOSO (A) CON LA PRESENTACION PERSONAL
GOZA DE ACEPTACION ENTRE COMPAÑEROS Y Y DISFRUTA DE PERTENECER A L GRUPO
ES PUNTUAL EN EL CUMPLIMIENTO DEL HORARIO ESTABLECIDO

| **C.SOC(HIST,GEO,CONST,DEMO)** | Sobresaliente | 0 |
|---|---|---|

** FORTALEZAS **
IDENTIFICA PRODUCTOS DEL CAMPO Y DE LA CIUDAD LOS QUE CONSIDERA NECESARIOS PARA LA VIDA DIARIA
RECONOCE QUE LOS RECURSOS NATURALES SON FINITOS Y EXIGEN UN USO RESPONSABLE
COMPARA LA FORMA DE VIDA DE DIFERENTES COMUNIDADES PARA IDENTIFICAR LA PROPIA

| **EDUCACION RELIGIOSA** | Excelente | 0 |
|---|---|---|

** FORTALEZAS **
RECONOCE QUE TODOS SOMOS DIFERENTES E IGUALMENTE IMPORTANTES
RECONOCE LA TOLERANCIA Y EL RESPETO COMO VALORES FUNDAMENTALES DEL SER HUMANO
RECONOCE LOS MIEMBROS DE LA FAMILIA A LA CUAL PERTENECE

| **HUMANIDADES: LENGUA CASTELLANA** | Excelente | 0 |
|---|---|---|

** FORTALEZAS **
SEPARA CORRECTAMENTE UNA PALABRA EN SILABAS
CONOCE Y CLASIFICA LAS PALABRAS EN SILABAS
LEE COMPRENSIVAMENTE UN TEXTO
RECONOCE LA ORACION COMO UNIDAD DE SENTIDO COMPLETO

Avelina

2.009 - 2°2.

# INSTITUCIÓN EDUCATIVA
# ENRIQUE VÉLEZ ESCOBAR

nag0l

## FICHA OBSERVADOR DEL ALUMNO(A)
Preescolar - Básica Primaria - Secundaria y Media

Alumno (a) _Leandinea Gutierrez Aguirre_

Grados _Primero_

Teléfono _____

# FICHA DE SEGUIMIENTO

## PREESCOLAR,
## BÁSICA PRIMARIA - BÁSICA SECUNDARIA Y MEDIA

Foto
al iniciar
el grado
11°



DEL ALUMNO(A): _Gutierrez Aguirre Cordura_

### INFORMACION GENERAL

| INDE HA CURSADO ESTUDIOS | MUNICIPIO | GRADO | AÑO | NOMBRE DEL DIRECTOR DE GRUPO |
|---|---|---|---|---|
| 1 | Bogd | 1° | 2006 | Berta Luz R. |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

FICHA DE SEGUIMIENTO: _Guarenta (Bogta) Guarún de 2006._

FECHA DE NACIMIENTO: _XI – 11 – 2.000._

DIRECCION Y BARRIO O SECTOR DONDE VIVE: _del sur_                                    TELEFONO

| APELLIDOS Y NOMBRES | ESCOLARIDAD | OCUPACION | TELEFONO |
|---|---|---|---|
| Elvia Gutierrez A. | | | |
| | | | |
| | | | |
| | | | |

R AL ALUMNO EL ESTABLECIMIENTO EDUCATIVO DEBE SOLICITAR LA FICHA DE SEGUIMIENTO Y CONTINUAR SU DILIGENCIAMIENTO

## REGISTRO DE ACONTECIMIENTOS SIGNIFICATIVOS

| DESCRIPCIÓN DE ASPECTOS SIGNIFICATIVOS POSITIVOS Y/O PARA MEJORAR OBSERVADOS | ESTÍMULO O CORRECCIÓN PROPUESTA | SEGUIMIENTO | NOMBRE DEL PROFESOR |
|---|---|---|---|
| *(handwritten text, largely illegible)* | INST. ED. E. V. L.<br>Sección Preprimaria<br>Coordinadora *(signature)* | | Bertalez R. G.<br>*(signature)* |

# REGISTRO DE ACONTECIMIENTOS SIGNIFICATIVOS

| FECHA | DESCRIPCIÓN DE ASPECTOS SIGNIFICATIVOS POSITIVOS Y/O PARA MEJORAR OBSERVADOS | ESTÍMULO O CORRECCIÓN PROPUESTA | SEGUIMIENTO | NOMBRE DEL PROFESOR |
|---|---|---|---|---|
|  | *(anotaciones manuscritas ilegibles)* |  |  | *(firma) Botastez R-S* |

| | DESCRIPCION DE ASPEC... POSITIVOS Y/O PARA... | FECHA |
|---|---|---|
| | | |

## REGISTRO DE ACONTECIMIENTOS SIGNIFICATIVOS

| ASPECTOS SIGNIFICATIVOS MEJORAR OBSERVADOS | ESTIMULO O CORRECCIÓN PROPUESTA | SEGUIMIENTO | NOMBRE DEL PROFESOR |
|---|---|---|---|
| Período. | | | |
| ...atisfactoria... ...l período ...ade mucho ...tamente]. | | | |
| ...pero en ...áreas es ...lente. | | | |
| ...y compro- ...todas sus | | | |
| ...scolares ...olo sus acti- | | | |
| ...en forma ...a, creativa ...cada. | | | |
| ...le y acepta ...s con ...bilidad. | '¡Felicitaciones!' | | Gracias a ti también M.ª Elena. |
| ...encia social | | | |
| ...ar son ...es | | | |
| ...a así! | | | |



Claudia Gutierrez, Mamá.





Las 3 hijas del señor
Milton Gerardo Espinoza.



Daniely Espinoza

Caroliny Gutierrez

Dayana Espinoza





26/09/2007

**REPÚBLICA DE COLOMBIA**



ORGANIZACIÓN ELECTORAL
REGISTRADURÍA NACIONAL DEL ESTADO CIVIL
DIRECCION NACIONAL DE REGISTRO CIVIL

| NUIP | AZBO 252201 | **REGISTRO CIVIL DE NACIMIENTO** | Indicativo Serial | 33261363 |
|------|-------------|----------------------------------|-------------------|----------|

**Datos de la oficina de registro - Clase de oficina**

Registraduría ☐   Notaría ☒   Número ☐   Consulado ☐   Corregimiento ☐   Inspección de Policía ☐   **Código** | 0 0 1

**País - Departamento - Municipio - Corregimiento e/o Inspección de Policía**

COLOMBIA – CUNDINAMARCA – BOGOTA D.C.

**Datos del inscrito**

| Primer Apellido | Segundo Apellido |
|-----------------|------------------|
| *** GUTIERREZ *** | *** AGUIRRE *** |

Nombre(s)

*** CAROLINA ***

| Fecha de nacimiento | Sexo (en letras) | Grupo sanguíneo | Factor RH |
|---------------------|------------------|-----------------|-----------|
| Año 2 0 0 0  Mes 1 1  Día 1 1  FEMENINO | | | |

Lugar de nacimiento (País - Departamento - Municipio - Corregimiento e/o Inspección)

ESTADOS UNIDOS – QUEENS – NEW YORK

| Tipo de documento antecedente o Declaración de testigos | Número certificado de nacido vivo |
|---------------------------------------------------------|-----------------------------------|
| CERTIFICADO DE NACIMIENTO Y TRADUCCION OFICIAL | |

**Datos de la madre**

Apellidos y nombres completos

*** GUTIERREZ AGUIRRE CLAUDIA  ELENA ***

| Documento de identificación (Clase y número) | Nacionalidad |
|---------------------------------------------|--------------|
| *** CC#43.580.518 de MEDELLIN *** | COLOMBIANA |

**Datos del padre**

Apellidos y nombres completos

*** ************* ********* ***

| Documento de identificación (Clase y número) | Nacionalidad |
|---------------------------------------------|--------------|
| *** *********** de ********* *** | ******* |

**Datos del declarante**

Apellidos y nombres completos

*** GUTIERREZ AGUIRRE CLAUDIA  ELENA ***

| Documento de identificación (Clase y número) | Firma |
|---------------------------------------------|-------|
| CC#43.580.518 de MEDELLIN | |

**Datos primer testigo**

Apellidos y nombres completos

*** ** ***

| Documento de identificación (Clase y número) | Firma |
|---------------------------------------------|-------|
| ** ** | |

**Datos segundo testigo**

Apellidos y nombres completos

*** ** ***

| Documento de identificación (Clase y número) | Firma |
|---------------------------------------------|-------|
| ** ** | |

| Fecha de inscripción | Nombre y firma del funcionario que autoriza |
|----------------------|---------------------------------------------|
| Año 2 0 0 1  Mes 1 2  Día 0 3 | NOTARIO |

| Reconocimiento paterno | Nombre y firma del funcionario ante quien se hace el reconocimiento |
|------------------------|--------------------------------------------------------------------|
| Firma | BOGOTA |

ESPACIO PARA NOTAS

Es fiel Copia. ... demostrar parentesco. ...

ORIGINAL PARA LA OFICINA DE REGISTRO





LOS NOMBRES DE LOS PADRES SON:
GUTIERREZ AGUIRRE CLAUDIA ELENA
C.C 43580618 DE MEDELLIN

SANTAFE DE BOGOTA                    4 Dic 2001

AMPARO MARTINEZ AGUILERA
AREA DE PASAPORTES.



MODIFICACIONES

REPUBLICA DE COLOMBIA

TIPO / TYPE    COD. PAIS / CODE COUNTRY    PASAPORTE Nº / PASSPORT No.
P                    COL                    RN 33261363

APELLIDOS / SURNAME
GUTIERREZ AGUIRRE

NOMBRES / GIVEN NAMES
CAROLINA

FECHA Y LUGAR DE NACIMIENTO / DATE AND PLACE OF BIRTH
11 NOV 2000 NEW YORK-QUEENS- EEUU

SEXO / SEX    LUGAR Y FECHA DE EXPEDICION / PLACE AND DATE OF ISSUE
F    BOGOTA  D.  C. 4 DIC 2001

FECHA DE VENCIMIENTO / DATE OF EXPIRY    AUTORIDAD / AUTHORITY
4 DIC 2011                    AMPARO MARTINEZ AGUILERA
                              AREA DE PASAPORTES.

PASAPORTE
PASSPORT

# TITLE XIV

## PATRIA POTESTAS

**Art 288.** Surrogated. Law 75 , 1968, art 19- Paternal authority is the set of rights that the law acknowledges to the parents over their non emancipated children [312], in order to facilitate them compliance with the duties imposed on them.

Sub-section 2o Amended. Decree 2820 of 1974, art.24- The exercise of the parental authority over their legitimate children shall be exercised jointly by both parents. In the absence of one of the parents, the other parent  shall exercise the paternal authority.

Non emancipated children are children under the care of the family, and the father or mother with respect to them, shall be father or mother with children under their care  ([Law 45 of 1936, 14 to 17].

**Article 289.** Amended. Decree 2820 of 1974, art 25. Legitimization grants the legitimate parents the patria potestas over  children under 21 years old whose majority has not been acknowledged and ends the guardianship[ Law 27 of 1977, art 2].

1

**Article 290.** Parental authority does not extend to the acts of a child who holds a government position, concerning his employment or position. Minors working as Government servants , are considered that have attained majority concerning their employment.

**Article 291.**Amended. Decree 2820 of 1974. Art.26. The father and the mother enjoy in equal parts of the property [823] of their children, except for:

1o) Assets from the children work or industry, which make up his professional or industrial private property.

2o) Property acquired by the child as gift [1443], estate [1011] when the giver or testator has expressly ordered that the profits of said goods correspond to the child and not to the parents; if only one of the parents is excluded, the other may enjoy of the property.

3o) Property from inheritances received by the children as a result of indignity   [ 1025] or disinheritance [1265]  of one  the parents, in whose case only the other parent will be entitled.

Assets over which the holders of the paternal authority have the legal usufruct, make part of the ordinary adventious private property of the child; those over

2

which none of the parents has the usufruct, make the extraordinary adventious private property. [2489]

**Article 292. Amended.** Decree 2820 of 1974, art. 27. Parents enjoy of the legal use of the property until the child emancipates [312 to 315]

**Article 293. Amended.** Decree 2820 of 1974, art.28- Parents are not bound to provide a security by reason of the legal use  [834 to 836].

**Article 294.** The child living with the family will be considered as emancipated [312] to administer and use his professional or industrial private wealth  ( Code of Civil Procedure, 811].

There no longer exists  acknowledgment of majority (law 27 of 1977).

**Article 295. Amended.** Decree 2820 of 1974, art 29. Parents administer the property of their children over which the law grants them the use.. They jointly or individually lack of this administration with respect to the property given as gift, inherited or given under this condition.

**Article 296. Amended.** Decree 2820 of 1974. Art. 30. Non administration by the father of the mother, or both, imposed by the giver or testator does not deprive them from the use , nor the provision depriving them from the use deprives them from the administration, unless the giver or testator have expressly provided so.

3

**Article 297. Amended.**Decree 2320 of 1974, art 31. Parents administering the child's property are not bound to make a solemn inventory provided they do not marry again [ 169}; but instead of said inventory, they shall keep a detailed description of said property from the beginning of the administration.

**Article 298. Amended.** Decree 2820 of 1974, art. 32. Parents are liable in the administration of the child's property for any decrease or deterioration caused by their gross negligence, or fraud [63 , 1604].

**Article 299. Amended.** Decree 2820 of 1974, art 33. Both Administration and use cease upon cessation of the paternal authority [315] and when through a court order it is declared that the parents exercising the paternal authority are liable of fraud or gross negligence [63] in the exercise of the paternal authority.

Negligence is assumed [66] when the property has significantly decreased or liabilities have increased, without a fair cause.

**Article 300. Amended.** Decree 2820 of 1974, art 34.- If the parents do not have the administration of the ordinary or extraordinary adventious private wealth , in whole or in part, a guardian will be assigned to administer the property [434,438].

4

However, the parents to whom the administration of the child's property in which the law gives the usufruct, shall not cease to have the right to the net profits, after deducting the management fees.

**Article 301.** Amended. Decree 2820 of 1974 , art. 35. In the case of the above article, the business of the child non authorized by whoever exercises the paternal authority or by the guardian, shall bind him only in his professional or industrial wealth.

But the child may not borrow money charging  interests, nor purchase on credit (except for the ordinary course of said wealth ), without written authorization from his parents. In case he does so, he shall not be bound by these agreements, until proving that he has obtained any profits from them. [261, 150].

**Article 302.** Amended. Decree 2820 of 1974, art 26. Acts undertaken or contracts entered into out of their professional or industrial private property and authorized or ratified by whoever exercises the paternal authority and  to the children until obtaining  the profits that he reports from such business.

**Article 303.** Real estate belonging to the  children may not be disposed of or mortgaged , even if they belong to their professional wealth, without a court decision, with due cause.

5

La 67 of 1930 art 1. The provisions of article 303, 483, 484 and 1810 of the Civil Code shall also apply to disposal of inheritance rights of the minor under pater.. authority or guardianship, and of married woman, respectively.

**Article 304**. Amended. Decree 2820 of 1974, art 37. Parents shall not give any gift from the child's property, nor lease them [1973] during a extended time, or accept or reject a estate given to the children, except under the terms and with the limitations imposed to the guardians [486, 487, 491,496, 1307].

**Article 305.** Amended. Decree 2820 of 1974, art.38.-Every time the child has to bring a suit against whoever exercises the paternal care, a guardian will be appointed for the suit [435], who shall preferably be a family defender, if there is any in the respective municipality; and if the child acts as a plaintiff, he shall need the authorization from the judge.

**Article 306.** Amendment. Decree 2820 of 1974, art.39- Judicial representation of the child corresponds to any of the parents.

The family child may only appear to court as a plaintiff, authorized or represented by one of his parents. If both parents do not agree or if they are disqualified to give this authorization or if they authorize without representing them, the rules of the Civil Procedural Code will apply for appointment of a guardian ad litem guardian [Code of Civil Procedure 45]

6

In civil proceedings brought against the family child, the plaintiff shall address to any of the parents to represent him in the suit. If none of the parents can represent the child, the provisions of the Code of Civil Procedure for appointment of a guardian ad litem shall apply.

**Article 307.** Amended. Decree 2820 of 1974, art. 40- The rights for administration of the property, legal use and out of court representation of the family child shall be jointly exercised by the father and the mother [2]. However, any of the parents may delegate in writing, said administration or representation, in whole or in part.

In the absence of one of the parents, such rights shall correspond to the other.

In the cases where there is no agreement of the holders of the paternal rights over the exercise of the rights dealt with in the first sub-section of this article, or in the event any of them does not agree in the manner in which the other is exercising the legal representation of the child, such parent shall ask the judge or officer appointed by the law to settle the difference in accordance with the pertinent procedural rules.

7

**Article 308.** Amended. Decree 2820 of 1974, art. 41. It shall not be necessary that the parents participate in the event of a criminal proceedings against the child; but they will be bound to provide him all the necessary help for his defense

**Article 309.** The child under the care of his family does not need his parents authorization to dispose of his properties in a will to be enforced after his death [ 184. 1061].

**Article 310.** Amended. Decree 2820 of 1974. Art. 42. Paternal authority ceases , with respect to any of the parents, as a result of their insanity, for not being capable of administer their own property, and after their prolonged absence. Also, it ceases due to the causes set forth in article 315; but if these causes are valid for both parents, the provisions of said article shall apply.

Upon cessation of the paternal authority with respect to both spouses, a guardian will be assigned to the minor.

Cessation or privation of the paternal authority does not release the parents from their duties with their children.

Law 83 of 1946 art 64- Suspension of the paternal authority or of the guardianship of a miner may be ordered, during a period indicated by the minors judge, by virtue of the following causes:

8

1) In the cases mentioned in article 315 of the Civil Code

2) Due to habitual vagrancy or begging of the minor in case the parents or guardians do no make all their efforts to avoid said behavior, and

3) When the minors judge deems it advisable for the health or the child, or to prevent a severe physical or moral danger.

**Article 311.** Cessation of the paternal authority shall be ordered by the court, understanding the basic facts, and after hearing the child relatives and the minors defender [ 61,315].

RA-6219322

EL SUSCRITO SECRETARIO DEL H. TRIBUNAL SUPERIOR DEL DIS-
TRITO JUDICIAL DE BOGOTA, D. E. COMPULSA LA SIGUIENTE COPIA:
" ACUERDO Nº 027 DE 12 DE SEPTIEMBRE DE 1989.-
DILIGENCIA DE POSESION DE LA SEÑORA DEBORA HILDA RESTREPO CEBALLOS
COMO TRADUCTORA E INTERPRETE OFICIAL DE LOS IDIOMAS INGLES-ESPA =
ÑOL; ESPAÑOL-INGLES.- En Bogotá, a los doce (12) días del mes de
Septiembre de mil novecientos ochenta y nueve (1989), compareció
al Despacho del Señor Presidente del Tribunal Superior de Bogotá,
la Señora Debora Hilda Restrepo Ceballos, identificada con la cé
dula de ciudadanía número 32.425.700 expedida en Medellín, con -
el objeto de tomar posesión del cargo de Traductora e Interprete
Oficial, para la cual fué admitida mediante Resolución Nº 2176 -
de Fecha Agosto quince (15) de mil novecientos ochenta y nueve -
(1989), expedida por el Ministerio de Justicia.- Para tal efecto
el Señor Presidente de la Corporación le tomó el juramento de ri
gor bajo cuya gravedad prometió cumplir bien y fielmente con los
deberes que el cargo le asignan.- Se firma por quienes en la dili
gencia intervinieron, haciendo constar que la copia que se le ex
pide a la interesada le acredita su calidad de Traductora e Inter
prete Oficial.- El Presidente, (Fdo.) Firma Ilegible. Hay sello.-
El Secretario, (Fdo.) Firma Ilegible.- El Posesionado, (Fdo.) Fir
ma Ilegible.- ""
ES FIEL COPIA.-

Bogotá, D. E. SEPTIEMBRE 15 DE 1989.-

P./ El Secretario,

MARCO ANTONIO CARDOZO ESPINE
Oficial Mayor

Itaguí, Junio 25, 2007

AUTHORIZATION

I, CLAUDIA ELENA GUTIÉRREZ-AGUIRRE, bearer of National I.D. Card No. 43.580.518 issued in Medellín hereby  grant authorization to let my daughter, CAROLINA GUTIÉRREZ-AGUIRRE, bearer of the birth registration certificate number 33261363 issued in the city of Bogotá- Colombia and passport RN 33261363, to travel to the city of Queens (New York) for her summer vacations. There she will be met by her father, MILTON GERARDO ESPINOZA-CALLE who is the bearer of Driver's license No. 018324420 (Connecticut), and mobile phone No. 347-539-91-64.

The child will travel on June 27 and will return on July 27 of this year.

Attached please find a copy of my Identity card.

Yours truly

CLAUDIA ELENA GUTIÉRREZ-AGUIRRE

National I.D Card No. 43.580.518 issued in Medellín.

Seal on the right-hand side:

SIGNATURE ACKNOWLEDGMENT

Before me, the undersigned Second   Notary of Itaguí District , personally appeared CLAUDIA ELENA GUTIÉRREZ-AGUIRRE, bearer of National ID Card No. 43.580.518  issued in Medellín , who certified that all she stated was

true and that the signature above is the same she uses in all her private and public deeds.

Signed by the Affiant on June 26, 2007.

Signed and sealed by the Notary in charge, Luisa Matilde Aristizabal-Velasquez.



Itagüí , Junio 25 de 2007

AUTORIZACION

Yo, CLAUDIA ELENA GUTIERREZ AGUIRRE, identificada con Cédula de ciudadanía No. 43.580.518 de Medellín me permito dar plena autorización para que mi hija CAROLINA GUTIERREZ AGUIRRE, identificada con el Registro Civil No. 33261363 efectuado en la ciudad de Bogotá - Colombia al igual que su pasaporte RN 33261363, pueda viajar con motivo de vacaciones a la ciudad de Queens (New York ) donde la recibirá su padre MILTON GERARDO ESPINOZA CALLE quien dota su licencia de conducción No. 018324-20 ( Connecticut ) y su teléfono celular No. 347- 539-91-64. Dicho viaje se efectuará el día 27 de Junio , con fecha de regreso para el 27 de Julio del año en mención.

Anexo a la presente fotocopia de mi cédula.

Agradeciendo de antemano,

CLAUDIA ELENA GUTIERREZ AGUIRRE
C.C. No. 43.580.518, Med.

DILIGENCIA DE RECONOCIMIENTO

En la ciudad de Itagüí, 26 JUN 2007
Compareció ante la Notaría Segunda del Círculo de Itagüí, Claudia Elena Gutierrez Aguirre quien se identificó con la C. de Ciudadanía Número 43.580.518 de Medellín y declaró que la firma y huella que aparecen en el presente documento son suyas y qué el contenido del mismo es cierto.

El Declarante,

La Notaría Segunda

NCC

REPUBLICA DE COLOMBIA
Luisa Matilde Aristizábal Velásquez
ENCARGADA
Notaría Segunda de Itagüí

Itaguí, August 3,2007

The Principal of "Avelino Saldarriaga" Educational Institution

Certifies that

The student Carolina Gutiérrez- Aguirre, bearer of birth registration certificate number 33261363 has been enrolled in this institution since January 29, 2007. After the summer vacations, her mother, Ms. Claudia Elena Gutiérrez-Aguirre, bearer of National I.D Card No. 43.580.518, informed her teacher that the student mentioned above would come back to school on July 22, after her trip to the USA.

This certificate was issued upon request of the interested party.

Signed in Itaguí on August 3, 2007.

Signed by the Principal, Fernando León García-Jaimes

Signed by the Teacher, Maria Elena Hidalgo.

Itaguí, 3 de agosto de 2007

EL RECTOR DE LA INSTITUCION EDUCATIVA AVELINO SALDARRIAGA

HACE CONSTAR QUE:

La alumna Gutiérrez Aguirre Carolina  con registro civil 33261363 está matriculada en nuestra Institución desde el 29 de enero de 2007, después de las vacaciones de mitad de año la madre de la alumna, la señora Claudia Elena Gutiérrez Aguirre, con cédula de ciudadanía 43.580.518,  le informó verbalmente a la profesora  que la alumna  ingresaría de nuevo a clases el 22 de julio por motivo de viaje, a los Estados Unidos.

La anterior certificación se expide a solicitud de la interesada.

Para constancia se firma en Itagüí, a los tres (3) días del mes de agosto de dos mil siete (2.007).

FERNANDO LEON GARCIA JAIMES
Rector

MARIA ELENA HIDALGO
Docente

INSTITUCIÓN EDUCATIVA AVELINO SALDARRIAGA
CALLE 39 No. 49-77 TELÉFONO: 281 31 58 TELEFAX: 281 00 50 ITAGÜÍ - ANTIOQUIA

Case 1:08-cv-00415-SJ-SMG    Document 1    Filed 07/01/08    Page 67 of 76 PageID #: 67

IDENTIFICACION DEL PASAJE
PERSONA RESPONSABLE QUE SOLICITA EL SERVICIO

Nombre del Recomendado: _Gomez Yazuli_   Fecha: ___ ___ ___

Edad: _6_   Silla: _31A_   Idioma: _esp_

El (los) abajo firmantes, responsable (s) legal (es) del pasajero recomendado, manifiesto (an) que solicita (an) su transporte y autorizo (amos) que viaje sin acompañante bajo la custodia de un Tripulante de cabina de pasajeros de Avianca o Sam.

Y CERTIFICO (AMOS) A QUIEN CORRESPONDA

Que eximimos a Avianca o Sam y a sus compañías matrices y a las compañías subsidiarias o afiliadas, contratistas, subcontratistas, directores, accionistas, empleados y agentes, de unas y otras, de responsabilidad por todos los hechos que puedan surgir desde el momento en que la aerolínea recibe el pasajero recomendado, durante el vuelo y hasta su entrega a la persona responsable en el lugar de destino, salvo que tales hechos ocasionen un daño o perjuicio, que ocurra por culpa grave o dolo imputable a la aerolínea o a alguno de sus dependientes.

Autorizo a que en el aeropuerto de destino el pasajero recomendado sea recibido por:

Nombre: _Milton Berbeo Medina_   Cel: _300 86 5180 CM H 85_  _300 13 63_

Tel: _3 4763 919164_   C.C o T.I: _01 081 8324470_

| | Fecha: _4 ( ) )_ | Nombre Rep. Servicio: _Ciudad Lopez_ |
|---|---|---|
| Origen | Vuelo: | Nombre del Auxiliar: |
| Destino 31A | Fecha: | Nombre Rep. Servicio: |
| | Vuelo: | Nombre del Auxiliar: |
| Destino | Fecha: | Nombre Rep. Servicio: |
| | Vuelo: | Nombre del Auxiliar: |
| Destino | Fecha: | Nombre Rep. Servicio: |
| | Vuelo: | Nombre del Auxiliar: |

**Origen**

En constancia de lo anterior se firma por la persona responsable que solicita el servicio de transporte de pasajero recomendado

Fecha: _21 06 ( ) )_

Nombre: _Claudia Gutierrez_

Teléfono: _377 382 2_

Dirección: _____

Firma: _____

**Destino**

Recibí el pasajero recomendado junto con todos sus documentos:

Firma de quien recibe al Recomendado en destino
Observaciones: _Tabajobe col_
_Idea 105_
_13 0PO201_

**◄Avianca**



**República de Colombia**
**Ministerio de la Protección Social**
**Instituto Colombiano de Bienestar Familiar**
**Subdirección de Intervenciones Directas**



Libertad y Orden

14360/

Bogotá, D. C.

2003 OCT 23  A 11: 35 ,

058149

Señora
**FABIANA V. SNYDER**
National Center for Missing & Exploited Children
Charles B. Wang International Children Building
699 Prince Street
Alexandria VA, 22314-3175
U. S. A.

**ENVIO EMS INTERNACIONAL**

Ref.  Solicitud de Restitución Internacional en Aplicación del Convenio de La Haya sobre Aspectos Civiles del Secuestro Internacional de Niños. Niña **CAROLINA GUTIERRREZ AGUIRRE**

Estimada Señora:

La Subdirección de Intervenciones Directas de Instituto Colombiano de Bienestar Familiar, presenta a usted un cordial saludo y en su condición de Autoridad Central en Colombia para la aplicación del Convenio de La Haya sobre Aspectos Civiles del Secuestro Internacional de Niños, se permite remitir la solicitud, con documentación anexa, que presentó la señora CLAUDIA ELENA GUTIERREZ AGUIRRE, para que en aplicación del aludido Convenio, se restituya a Colombia a su hija CAROLINA GUTIERREZ.

De conformidad con los hechos expuestos en la documentación que acompaña la solicitud, la niña tiene 7 años y es nacida en Estados Unidos; su madre es la ciudadana colombiana CLAUDIA ELENA GUTIERREZ, el señor MILTON GERRADO ESPINOZA CALLE hizo reconocimiento voluntario como padre de la niña en el Consulado de Colombia en New York, mediante escritura pública de 9 de junio de 2005 y actualmente es quien retiene la niña en 30-44 86 St Elmhurts N.Y. 11369.

La madre siempre ha ejercido la custodia efectiva de la niña en Colombia, y la autorizó para viajar a la ciudad de Queens por periodo de vacaciones, con fecha de retorno a Colombia el día 27 de junio de 2007, sin que a la fecha el padre haya permitido el regreso de la niña, configurándose una situación de retención ilícita que requiere aplicación del Convenio de la Haya de 25 de octubre de 1980, con el fin de que se ordene el retorno de la niña a Colombia, su país de residencia habitual.

Cordialmente,

**MARTHA YANETH GIRALDO ALFARO**
Subdirectora de Intervenciones Directas (E)
Anexo 81 folios

Copia.         Subdirección de Intervenciones Directas
               Sra. Carolina Gutierrez. Diagonal 39 No. 32-67 Interior 302 Itaguí Antioquia.
Proyectó:      Janeth Alemán Sánchez

Avenida Carrera 68 No. 64C-75   PBX 437 76 30
Información, denuncias y quejas 01 8000 918080
www.bienestarfamiliar.gov.co
Bogotá, D.C.  -  Colombia

**SOLICITUD DE REGRESO___ O DE REGULACIÓN DE VISITAS___
CONVENIO DE LA HAYA DEL 25 DE OCTUBRE DE 1.980 SOBRE LOS
ASPECTOS CIVILES DEL SECUESTRO INTERNACIONAL DE NIÑOS.**

AUTORIDAD CENTRAL REQUERIDA

AUTORIDAD REQUIRENTE
**INSTITUTO COLOMBIANO DE BIENESTAR FAMILIAR, Avda. Cra. 68 No.64-C-75
Bogotá D. C.**

**Lugar y Fecha:** Agosto 21 de 2007 ; Itagui

**Concierne al Niño (a)** Carolina Gutierrez Aguirre

**Que tendrá 16 Años El** 17 **(día)** 11 **(mes)** 2016 **(año)**

IDENTIFICACIÓN DEL NIÑO Y PADRES

**NOTA:** LOS ESPACIOS SIGUIENTES DEBERÁN SER LLENADAS DE LA
MANERA MÁS COMPLETA POSIBLE.

NOMBRE DEL (DE LA) NIÑO(A)

NIÑO(A) Carolina Gutierrez Aguirre
APELLIDO Y NOMBRES DE PILA

FECHA Y LUGAR DE NACIMIENTO
Queens, New York Noviembre 17 / 2000
RESIDENCIA HABITUAL ANTES DEL SECUESTRO
Diagonal 39 # 32 - 67 , interior 302
PASAPORTE O TARJETA DE IDENTIDAD No. (SI LO HUBIERE)
Pasaporte N.o. 33261363
SEÑALES PARTICULARES Y FOTO EVENTUAL (VÉANSE ANEXOS)

**MADRE** 022538

APELLIDO Y NOMBRES DE PILA
Claudia Elena Gutierrez Aguirre
FECHA Y LUGAR DE NACIMIENTO
Febrero 14 1974 , Medellin

PROFESIÓN.

RESIDENCIA HABITUAL
Diagonal 39 # 32-67, interior 302

PASAPORTE O TARJETA DE IDENTIDAD No (SI LO HUBIERE)

Cedula de ciudadania No. 43.580.518

### PADRE

APELLIDO Y NOMBRES DE PILA
Espinoza Calle Hilton Gerardo

FECHA Y LUGAR DE NACIMIENTO
Enero 24 1967, Cañar (Ecuador)

PROFESIÓN
Independiente en Construcción.

RESIDENCIA HABITUAL
30-44 86 st Elmhurst N.Y 11369

PASAPORTE O TARJETA DE IDENTIDAD No. (SI LO HUBIERE)

Licencia de conduccion # 018324420.

FECHA Y LUGAR DEL MATRIMONIO

### ESTADO CIVIL DE LOS PADRES

SOLTEROS___ CASADOS___ DIVORCIADOS___ UNIÓN
LIBRE___ OTRO x  mama soltera ; padre union Libre

### PERSONA O INSTITUCIÓN QUE EJERCÍA LA GUARDA EFECTIVAMENTE ANTES DEL SECUESTRO

APELLIDO Y NOMBRES DE PILA Gutierrez Aguirre Claudia Elena

NACIONALIDAD (SI FUERE PERSONA FÍSICA)
Colombiana

PROFESIÓN (SI FUERE PERSONA FÍSICA) Secretaria

DIRECCIÓN (SI LA HUBIERE)
Diagonal 39 #32-67 interior 302

RELACIÓN CON EL (LA) NIÑO (A)
madre de la niña.

NOMBRE Y DIRECCIÓN DEL CONSEJERO LEGAL (SI LO HUBIERE)
30.44 86 st Elmhurst N.y 11369

LUGAR DONDE DEBERÍA HALLARSE EL (LA) NIÑO (A)

### DATOS RELATIVOS A LA PERSONA DE QUIEN SE ALEGA QUE HA SECUESTRADO O RETENIDO AL NIÑO

APELLIDO Y NOMBRES DE PILA
Espinoza Calle Hilton Gerardo.

3

**PROFESIÓN**

Construccion.

**ULTIMA RESIDENCIA CONOCIDA :** Direccion a traves de la A-gencia de Avianca. 30-44 86 st Elmhurst N.Y 11369

**NACIONALIDAD, SI FUERE CONOCIDA**

Ecuatoriano.

**PASAPORTE O TARJETA DE IDENTIDAD NO. (SI LO HUBIERE )**

Licencia de conduccion # 018324420.

**SEÑALES PARTICULARES Y EVENTUALMENTE FOTO (VÉANSE ANEXOS)**

**DIRECCIÓN DEL (DE LA)**

## OTRAS PERSONAS SUSCEPTIBLES DE DAR OTROS DATOS QUE PERMITAN HALLAR AL NIÑO (A)

Este señor tiene 2 hermanos mas que vi-ven en Queens, N.Y.

## MOMENTO. LUGAR Y CIRCUNSTANCIAS DEL TRASLADO O DEL NO REGRESO ILÍCITOS. señor Hilton.

Julio 4, 2007, New York, el me informo a-cerca de sus injustificadas intenciones de quedarse con mi hija. Junio 27, 2007 fecha en la que viajó mi hija. Carolina.

## MOTIVOS RELATIVOS A HECHOS O MOTIVOS LEGALES QUE JUSTIFICAN LA SOLICITUD.

Mas que ser su madre tengo una bella responsabilidad y una mision que cumplir en la cual lo que mas quiero hacer es cuidarla a mi hijo, protegerla y amarla como solo ella se lo merece.

**ACTUACIONES CIVILES EN CURSO**

no, por parte mia

**ACTUACIONES PENALES EN CURSO**

no, por parte mia.

## EL (LA) NIÑO (A) DEBERÁ SER ENTREGADO A

**APELLIDO Y NOMBRE DEL PILA**

Gutierrez Aguirre Claudia Elena

febrero 14 / 1974 , Medellin

**FECHA Y LUGAR DE NACIMIENTO**

Diagonal 39 #32 -67 interior 302

**DIRECCIÓN**

Oficina 5140086 ; Casa 3777382 ; celular

**TELÉFONO**

314 7616510.

**OTRAS OBSERVACIONES**

**LISTA DE LOS DOCUMENTOS PRESENTADOS**

**1- REGISTRO CIVIL DE NIÑO (A)**

**2- REGISTRO CIVIL DEL PADRE Y MADRE**

**3 - FOTOGRAFÍAS DE NIÑO (A) Y DEL PADRE O DE LA MADRE.**

**4- OTROS DOCUMENTOS QUE SOPORTEN LA SOLICITUD.**

- Certificados de ingreso.
-    "    de estudios. y referencias.

**FECHA**

Agosto 21 / 2007

**LUGAR**

Itagui (Antioquia)

**FIRMA DEL SOLICITANTE**

c.c. 43580518.

**RETURN APPLICATION___    ACCESS APPLICATION___**
**HAGUE CONVENTION OF OCTOBER, 1980 ON THE CIVIL ASPECTS OF**
**INTERNATIONAL CHILD ABDUCTION**

| REQUESTED CENTRAL AUTHORITY | APPLICANT CENTRAL AUTHORITY INSTITUTO COLOMBIANO DE BIENESTAR FAMILIAR Avda. Cra 68 No. 64-C-75 |
|---|---|
| CONCERNING THE CHILD<br><br>WHO WILL REACH THE AGE OF 16 YEARS OLD ON 11 – 11 – 2016. | |

**CHILD IDENTIFICATION**

CHILD'S NAME (LAST NAME, NAME)
Gutierrez Aguirre Carolina

PLACE AND DATE OF BIRTH:
Queens, New York, November 11 2000

ADDRESS (BEFORE REMOVAL)
Diagonal 39 # 32 – 67 interior 302.

PASSPORT No. 33261363 COUNTRY     Colombian
I. D Card No.
NATIONALITY

HEIGHT   1:25 mt.     WEIGTH   48 pounds

VISIBLE MARKS

HAIR COLOR          EYES COLOR
Black                  Black.

**FATHER IDENTIFICATION**

NAME ( LAST NAME, NAME)
Espinoza Calle Milton Gerardo

PLACE AND DATE OF BIRTH
Cañar (Equator); January 24 – 1967.

IDENTIFICATION
I.D. 0301006508 ; Cañar

Citizenship Card_____ Alien Card __✗__ Passport____
No 472 – 396932 _____ issued   Ecuadorian.

NATIONALITY
OCCUPATION   construction – Independent

PRESENT ADDRESS   3044 86 St Elmhurst N.Y. 11369.

Telephone No. cel ∞ 347 5399164.

PRESENT COUNTRY OF RESIDENCE  N. Y.  EE-UU.

## MOTHER IDENTIFICATION

NAME ( LAST NAME, NAME)
Gutierrez Aguirre Claudia Elena

PLACE AND DATE OF BIRTH
Medellin, february 14 - 1974

IDENTIFICATION
I.D. # 43.580.518 , Medellin.

Citizenship Card  X  Alien Card ____  Passport____
No 43.580.518 ____ issued Colombian.

NATIONALITY
OCCUPATION  Secretary.

PRESENT ADDRESS
Diagonal 39 #32-67, interior 302
Telephone No. offic  5140086 ; home 3777382
cel: 314, 7616510.
PRESENT COUNTRY OF RESIDENCE  Colombia.

## MARITAL STATUS OF THE PARENTS

SINGLE......MARRIED.......DIVORCED......COHABITATION.X.OTHER
mother single, father cohabitation

## PERSON WITH THE CUSTODY AND PERSONAL CARE OF THE CHILD
GUTIERREZ AGUIRRE CLAUDIA ELENA.

FATHER........MOTHER.X.OTHER.....ACCREDITING DOCUMENT........
Gutierrez Aguirre Claudia Elena, #3580518.

## APPLICANT DATA

| NAME (LAST NAME, NAME)<br>Claudia Elena Gutierrez | ACCUPATION<br>Secretary |
|---|---|
| NATIONALITY Colombian | |
| PRESENT ADDRESS<br>(TELEPHONE No. 3777382<br>Diagonal 39 #32-67<br>Interior 302. Sn Jose. | IDENTIFICATION<br>Citizenship Card.X..Alien Card........<br>Passport No..43.5.80.5.18<br>Issued in Medellin. |
| COUNTRY OF PRESENT RESIDENCE:<br>Colombia | RELATIONSHIP WITH THE CHILD<br>Mother |

## DATA ON THE PERSON WHO SUPPOSEDLY REMOVED AND RETAINED THE CHILD BY FORCE

| NAME (LAST NAME, NAME)<br>Milton Gerardo Espinota | KNOWN BY OTHER NAME:<br>no. |
|---|---|

| PLACE AND DATE OF BIRTH | NATIONALITY |
|---|---|
| Equator January 24 - 1967 | Ecuadoran |
| OCCUPATION, NAME AND ADDRESS | HEIGTH 1.70. |
| bricklayer in construc-tion. He work in Queens. | WEIGTH 140 pounds. |
| COLOR OF HAIR Black. | VISIBLE MARKS |
| COLOR OF EYES Black. | none. |

**POSSIBLE ADDRESS OF THE MINOR AND OF THE PERSON RETAINING THE CHILD** phone: 347 S399164

3044 86 st elmhurst N.y 11369.

**OTHER PERSONS WITH ADDITIONAL INFORMATION REGARDING LOCATION OF CHILD** that living

He has two more brothers. in Queens.

**DATE, PLACE AND CIRCUMSTANCES OF THE FORCED REMOVAL OR RETENTION**

July 4, 2007, New york - He informed me about his intentions. June 26, 2007 my daughter traveled.

**LEGAL PROCEEDINGS UNDER WAY**

**THE CHILD MUST BE RETURNED TO:**

NAME: ( LAST NAME, NAME) Claudia Gutierez.

PLACE AND DATE OF BIRTH Medellin, February 14 - 1974

IDENTIFICATION CITIZENSHIP CARD.X.ALIEN CAR.....PASSPORT No...... ISSUED IN Medellin. 43580578

ADDRESS Diagonal 39 #32 - 67 interior 302.

TELEPHONE NUMBER 5140086 ; 3777382 ; 314 7616510

**PROPOSED ARRANGEMENTS FOR THE RETURN TRIP OF THE CHILD**

none so far.

OTHER REMARKS I am her mother and I am responsible for her. I need to hav her back here to take care of her and protect her ; since he works all the time and leaves the child with her stepmother or with her politic aunt.

8

| ATTACHED DOCUMENTS |
|---|
| DIVORCE JUDGMENT___GUARDIANSHIP___JUDMENT OF DEPRIVATION OR CESSATION OF THE PATERNAL AUTHORITY____ |
| 1-CIVIL RECORD OF BIRTH OF THE CHILD_X |
| 2-CIVIL RECORD OF BIRTH OF THE MOTHER_X |
| 3-CIVIL RECORD OF BIRTH OF THE FATHER____ |
| 4-CHILD PHOTOGRAPH_X |
| 5- FATHER'S PHOTOGRAPH_X |
| 6- MOTHER'S PHOTOGRAPH_X |
| ALL DOCUMENTS TRANSLATED TO ENGLISH_X_FRENCH___ |
| OTHER DOCUMENTS |
| NUMBER OF PAGES____ |

SIGNATURE OF THE APPLICANT:                    PLACE AND DATE:

*Claudia [signature]*                    *Itagui , Colombia.*

*C.C. 43580518, Med.  August 26 - 2007.*