UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
CLAUDIA GUTIERREZ AGUIRRE,

          Petitioner,

  -against-

MILTON ESPINOZA CALLE,

          Respondent.
-----------------------------------------------------------------x

REPORT &
RECOMMENDATION
08-CV-2613 (SJ)

GOLD, STEVEN M., U.S.M.J.:

Claudia Gutierrez Aguirre brings this action against Milton Espinoza Calle seeking the return of their daughter, Carolina Gutierrez Aguirre ("Carolina"), to Colombia pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"), T.I.A.S. No. 11,670 at 1, *reprinted in* 51 Fed. Reg. 10493 (1986), implemented by the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601 *et seq.*[1]  *See* Verified Petition ("Pet.") Ex. A, Docket Entry 1.  The Hague Convention was adopted "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence."[2] Hague Convention, Preamble.

Upon plaintiff's application and in light of defendant's failure to appear or otherwise defend in this action, the Clerk of the Court entered the default of defendant on August 26, 2008. The Honorable Sterling Johnson, Jr. then referred the matter to me, and this Report sets forth my

---

[1] Pursuant to Federal Rule of Civil Procedure 5.2(h), petitioner has waived Carolina's privacy protection by using Carolina's full name instead of initials.

[2] The United States adopted the Hague Convention on July 1, 1988 and it was "ratified between the United States and Colombia on June 1, 1996."  Pet. ¶ 1.

recommendation with respect to the judgment to be entered.

## Background

Carolina was born in the United States on November 11, 2000. *Id.* ¶ 10. Aguirre and Calle have never been married to each other and they ended their relationship prior to Carolina's birth. Pet. ¶ 11. Aguirre informed Calle of her intention to return to Colombia with Carolina and, according to the complaint in this action, Calle did not object. *Id.* ¶ 11. On March 19, 2001, Aguirre and Carolina moved to Colombia where they have lived since Carolina was 4 months old. *Id.* ¶ 10. There is no custody agreement between Carolina's parents and there has been no judicial or administrative determination of their rights either in Colombia or the United States. *Id.* ¶¶ 18, 19.

In the summer of 2005, Aguirre authorized a visit for Carolina with Calle in the United States for 20 days. *Id.* ¶ 24. Calle returned Carolina to Colombia without incident. *Id.* In 2007, Calle requested another visit and Aguirre again authorized Carolina to visit with Calle in the United States, this time for one month from June 27, 2007 through July 27, 2007. *Id.* ¶¶ 25, 26 and Ex. J. On July 4, 2007, Calle told Aguirre that he would not be returning Carolina because he wanted to keep her in New York. *Id.* ¶ 27. On July 27, 2007, Calle failed to return Carolina to Colombia as scheduled. *Id.* Aguirre has not seen Carolina since June 27, 2007. *Id.* ¶ 29. Aguirre has had some telephonic contact with Carolina over the past year, although Calle recently terminated his cell phone service. *Id.*; Pet'r Letter dated Aug. 29, 2008. Aguirre has asked Calle to return Carolina. Pet. ¶ 27. Additionally, Aguirre has made formal requests for the return of Carolina, filed with the United States Department of State and the National Center for Missing and Exploited Children. *Id.* ¶ 30.

As noted above, respondent failed to appear in or otherwise respond to this action. In addition, petitioner reports that it now appears that Calle has moved out of his home in Elmhurst, New York where he has resided since 2000 and that he has terminated his cell phone service. Pet'r Letter dated Aug. 29, 2008; Pet. ¶ 23. At this time, petitioner is investigating the current location of Calle and Carolina.[3] Pet'r Letter dated Aug. 29, 2008.

## Discussion

*A.     Liability*

Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080, 113 S. Ct. 1049 (1993); *Montcalm Pub. Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992). A court, however, retains the discretion to determine whether a final default judgment is appropriate. *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir. 1993). Even after a defendant has defaulted, "[a] plaintiff must...establish that on the law it is entitled to the relief it seeks, given the facts as established by the default." *U.S. v. Ponte*, 246 F. Supp. 2d 74, 76 (D. Me. 2003) (citation omitted). *See also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (recognizing the court's authority, even after default, to determine whether plaintiff has stated a cause of action).

*B.     The Hague Convention*

As noted above, the intention of the Hague Convention is to protect children from unilateral removal or retention by parents, guardians, and other close family members. Hague

---

[3] Calle is a citizen of Ecuador and a legal alien in the United States. Pet. ¶ 23.

Convention, Preamble. *See also Gitter v. Gitter*, 396 F.3d 124, 129 (2d Cir. 2005). "The Convention consequently places at the head of its objectives the restoration of the *status quo*, by means of the prompt return of children wrongfully removed to or retained in any Contracting State." *Id.* at 130 (internal quotation marks omitted). Accordingly, upon a finding that a child has been wrongfully removed or retained, Article 12 of the Hague Convention provides that a court "shall order the return of the child forthwith."[4]

First, I note that petitioner has satisfied all technical requirements of the Hague Convention and ICARA; that is, there are no limitations, notice, jurisdiction, or venue issues. *See* Pet. ¶¶ 7, 9, 22, 31. Second, petitioner has established the elements required to state a claim pursuant to the Hague Convention and ICARA. Article 3 of the Hague Convention provides:

> The removal or the retention of a child is to be considered wrongful where–
> (a) it is in breach of rights of custody attributed to a person, . . . either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
> (b) at the time of the removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Accordingly, for petitioner to prevail on her claim, she must establish by a preponderance of the evidence – or, where as here, defendant has defaulted, establish with facts alleged in her petition – that (1) the child was habitually resident in one country; (2) petitioner had custody rights under the law of the place of habitual residence, and was exercising those rights at the time of the removal or retention; and (3) the removal or retention was in breach of petitioner's custody

---

[4] Article 13 provides for limited defenses to the mandatory return. Any available defenses are not applicable in this case.

4

rights. *Villegas Duran v. Arribada Beaumont*, 534 F.3d 142, 147 (2d Cir. 2008) (*citing* 42 U.S.C. § 11603(e)(1)(A); *Gitter v. Gitter*, 396 F.3d 124, 130-31 (2d Cir. 2005)). Aguirre sufficiently alleges these three elements in her petition.

   *1. Habitual Residence*

   Although the Hague Convention does not define "habitually resident," the Second Circuit has set forth the standard for determining a child's habitual residence as follows:

> First, the court should inquire into the shared intent of those entitled to fix the child's residence (usually the parents) at the latest time that their intent was shared. In making this determination the court should look, as always in determining intent, at actions as well as declarations. Normally the shared intent of the parents should control the habitual residence of the child. Second, the court should inquire whether the evidence unequivocally points to the conclusion that the child has acclimatized to the new location and thus has acquired a new habitual residence, notwithstanding any conflict with the parents' latest shared intent.

*Gitter*, 396 F.3d at 134. *See also Villegas Duran*, 534 F.3d at 147; *Laguna v. Avila*, 2008 WL 1986253, at *5 (E.D.N.Y. May 7, 2008). Moreover, the Explanatory Report on the Hague Convention states that "the law of the child's habitual residence is invoked in the widest possible sense." *Whallon v. Lynn*, 230 F.3d 450, 455 (1st Cir. 2000).

   Here, the parents' last shared intent was for Carolina to reside in Colombia. Aguirre took Carolina to Colombia at 4 months old without objection by Calle. Pet. ¶ 11. For the past six years, Carolina has lived in Colombia and attended school there. *Id.* ¶¶ 10, 14. The only times that Carolina has stayed in the United States with her mother's consent were for the first 4 months of her life, during one 20-day visit with Calle in 2005, and for the first 30 days of her visit with Calle in 2007. *Id.* ¶ 13. Second, although Carolina has now been in the United States

for over a year, there is no evidence that Carolina has acclimatized to the United States. Accordingly, the well-pleaded allegations of the complaint sufficiently establish that, prior to the retention, Carolina was a habitual resident of Colombia. *Id.* ¶¶ 10-16.

　　*2. Petitioner's Right to Custody*

　　Second, petitioner must establish her parental right of custody under the law of the habitual residence, here Colombia. Hague Convention, Art. 3. Article 5 of the Hague Convention simply defines "rights of custody" as any "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence."[5] Petitioner alleges that her custody rights arise by operation of Colombian law, as opposed to a judicial or administrative decision or an agreement by the parties. Pet. ¶ 17. *See also* Hague Convention, Art. 3 (providing that "rights of custody . . . may arise in particular by operation of law"). In *Garcia v. Angarita*, 440 F. Supp. 2d 1364 (S.D. Fla. 2006), the Southern District of Florida discussed at length *patria potestas*, or "parental authority," under Colombian law, and that discussion bears repeating here:

> Title XII of the Colombian Civil Code sets forth the rights and duties between parents and children. Article 253 provides, "Both parents . . . shall exercise the parental care in the upbringing and education of their legitimate children."
>
> Title XIV of the Colombian Civil Code sets forth the rights of "Patria Potestas." Article 288 provides that "Paternal authority is the set of rights that the law acknowledges to the parents over their non-emancipated children . . . ." It further provides that, "The exercise of the parental authority over their legitimate children

---

　　[5] In contrast, the Hague Convention defines "rights of access" as "the right to take a child for a limited period of time to a place other than the child's habitual residence." Hague Convention, Art. 5. The remedy of return is limited solely to violations of rights of custody and not violations of rights of access. *Id.*, Art. 12. *See also Villegas Duran*, 534 F.3d at 147.

> shall be exercised jointly by both parents. In the absence of one of the parents, the other parent shall exercise the paternal authority." Article 338 of the Colombian Minors' Code provides that, "When a minor is going to go out of the country with one of the parents or with a person different from their legal representatives, they should previously obtain the permission of the parent or legal representative who is not traveling, authenticated before a notary or consular authority."[6]

*Garcia*, 440 F. Supp. 2d at 1375. Accordingly, under Colombian law, petitioner and respondent share joint custodial rights. Because petitioner shares with respondent a joint right and responsibility of "parental care in the upbringing and education" of Carolina, Colombian Civil Code, Art. 253, Aguirre has a right of custody under the Hague Convention. *Furnes v. Reeves*, 362 F.3d 702, 715 (11th Cir. 2004) (holding that a joint right of custody is sufficient to invoke the Hague Convention).

The Second Circuit has defined "custody of a child" as "the primary duty and ability to choose and give sustenance, shelter, clothing, moral and spiritual guidance, medical attention, education, etc. . . ." *Croll v. Croll*, 229 F.3d 133, 138 (2d Cir. 2000). *See also Furnes*, 362 F.3d at 716 (holding that the "right to determine a child's language, nationality, and cultural identity is plainly a right 'relating to the care of the person of the child' within the meaning of the Convention") (*quoting* the Hague Convention). Since Carolina's birth, Aguirre has had sole custody of Carolina and taken responsibility for raising her. Pet. ¶¶ 10, 14, 20. As the sole parent responsible for Carolina's care, Aguirre has determined that Carolina will speak Spanish and attend school in Colombia, and that Carolina will be a Colombian National. *Id.* ¶¶ 6, 12, 14,

---

[6] Although not cited by petitioner, I note that Article 310 of Title XIV of the Colombian Civil Code provides that an individual's parental authority ceases after his "prolonged absence." Pet. Ex. I.

7

16. Clearly, Aguirre has rights of custody under Colombian law that can be enforced by the Hague Convention.[7]

In addition, petitioner must demonstrate that she was exercising her custodial right at the time of the wrongful retention. As discussed above, Aguirre was exercising her custody rights up until the time when Carolina was retained in the United States by Calle. Pet. ¶¶ 6, 10, 12, 14, 16, 20.

   *3. Wrongful Retention*

Finally, petitioner must establish that respondent's retention has breached petitioner's right. Hague Convention, Art. 3; *see also Laguna*, 2008 WL 1986253, at *6. As noted above, petitioner authorized Carolina's visit to the United States only for the period from June 27, 2007 through July 27, 2007. Pet. ¶¶ 25, 26 and Ex. J. On July 4, 2007, Calle informed Aguirre that he would not return Carolina to Colombia at the end of July, and in fact he did not return her on the scheduled date. *Id.* ¶ 27. Over the past year, petitioner has made formal and informal requests for Carolina's return to Colombia to no avail. *Id.* ¶¶ 28-30. Petitioner has thus sufficiently pled that Calle breached Aguirre's custody rights by his unilateral decision to retain Carolina in the United States after July 27, 2007.

---

[7] In her petition, Aguirre notes that Article 338 of the Colombian Minors' Code specifically requires permission of the non-traveling parent (here, Aguirre) for any travel outside of Colombia and that Aguirre exercised this *ne exeat* right of custody. Pet. ¶ 21. Black's Law Dictionary (8th ed. 2004) states that *ne exeat* is from the Latin, meaning "that he not depart" and defines it in family law as "an equitable writ restraining a person from leaving, or removing a child . . . from, the jurisdiction." The Second Circuit, however, has held that a *ne exeat* right such as this is insufficient to establish a right of custody under the Hague Convention. *Villegas Duran*, 534 F.3d at 148 (*citing Croll*, 229 F.3d at 138-40); *but see Furnes*, 362 F.3d at 715 (holding that a *ne exeat* right is a right of custody under the Hague Convention); *Garcia*, 440 F. Supp. 2d at 1378 (following *Furnes* and holding that the *ne exeat* right under Colombian law constitutes a right of custody under the Hague Convention).

## Conclusion

For all these reasons, I conclude that petitioner has established respondent's wrongful retention of Carolina under the Hague Convention. I therefore respectfully recommend that judgment be entered in favor of petitioner and that an order be entered directing the prompt return of Carolina Gutierrez Aguirre to her habitual residence, Colombia, pursuant to Article 12 of the Hague Convention and 42 U.S.C. § 11601(a)(4). In addition, I respectfully recommend that judgment be entered against respondent for petitioner's attorney's fees and costs, pursuant to Article 26 of the Hague Convention and 42 U.S.C. § 11607, in an amount to be determined at an inquest.

Any objections to this report and recommendation must be electronically filed within ten days and in any event no later than September 23, 2008. Failure to file timely objections may waive the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 6(a), 6(e), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 14, 15 (2d Cir. 1989). Petitioner is hereby directed to serve copies of this Report and Recommendation upon respondent at his last known address, and at any other address that petitioner locates for respondent during its investigation, and to file proof of service with the Court.

/s/
**Steven M. Gold**
**United States Magistrate Judge**

**September 9, 2008**
**Brooklyn, New York**

*U:\eoc 2008\aguirre.wpd*

9